(Decided April 18th, 1860.)

---

## GEO. P. KANE *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE, and JAMES S. SUTER.

Under Art. 3, sec. 46, of the Constitution, the Legislature cannot take, or confer on any municipal or other corporation the power to take, *private* property for any other than a *public* use.

The Act of 1853, ch. 376, authorises the city of Baltimore to purchase, or acquire title to property by condemnation, not for *all* purposes, but for "the purpose of conveying water into said city, for the use of the said city, and for the health and convenience of the inhabitants thereof."

Under this Act the city may acquire, by condemnation of the bed of a stream, or water-course, a right to the use of the water in perpetuity, but the *use* must be the *one specified in the Act.*

Such a condemnation confers on the city the use and occupation of the stream *for the purposes mentioned in the Act,* but leaves in the owner all such use of it as does not injuriously interfere therewith.

Kane *vs.* Mayor & C. C. of Balto., *et al.*

The owner has the right to use the water in the manner it has been customary to use it at his mill built on the stream so condemned, so far as that use may not interfere with the use of the same by the city authorities for supplying the city with pure water.

APPEAL from the Equity side of the Superior Court of Baltimore city.

By the Act of 1853, ch. 376, entitled "An Act for supplying the City of Baltimore with pure water," the Mayor and City Council of Baltimore were authorized to contract, and *agree* with the owners, to purchase and "hold in *fee-simple*, or for a term of years, any land, real estate, spring, brook, water and water-course, which they may conceive expedient and necessary *for the purpose of conveying water into the said city*, for the use of the said city, and for the health and convenience of the inhabitants thereof," and in case they cannot agree with the owners, or of incapacity to contract, then the said Mayor and City Council are to have authority to summon a jury in the usual way to ascertain the damages to be paid by them "for the land, spring, brook, water-rights, or other property they may deem necessary to purchase and hold for the purpose," and that the inquisition of the jury shall be returned to the Circuit court of the county and confirmed at its next session, if no sufficient cause to the contrary be shown, and shall "describe the property taken, or the bounds of the land condemned, and the *quantity or duration of the interest* in the same, valued to the Mayor and City Council of Baltimore, and such valuation when paid or tendered to the owner or owners of said property, or his, her, or their legal representatives, shall entitle the said Mayor and City Council of Baltimore to the use, estate and interest in the same, thus valued, as fully as if it had been conveyed by the owner or owners of the same."

Samuel D. Tonge was the owner of a tract of land through which flowed a stream called "Jones' Falls," and on which land and stream was a valuable merchant flour-mill, known as "Rockdale Mill." The city authorities, under the above Act, caused a part of this land, constituting the bed of the stream, to be condemned. The inquisition after

31    v.15

describing the land (and among the calls and bounds of the description, the "*high water line of Jones' Falls,*" is several times mentioned,) states that "said piece or parcel of land, with all water rights whatsoever thereto attached, together with the lease-hold and *fee-simple estate* therein, is required by the said Mayor and City Council of Baltimore, for the conveying water into said city," and then assesses $32,000 damages to Tonge for "the taking, use and occupation aforesaid." This inquisition was confirmed on the 2nd of March 1857, by the Circuit court for Baltimore county. After this confirmation, the city authorities, having received notice from parties interested in the land and damages, and being warned not to pay the same to Tonge, filed their bill of interpleader asking that the parties interested might litigate their rights to the same, and in the meantime that the money might be paid into court. Pending this litigation, Tonge applied for the benefit of the insolvent laws, and his permanent trustee applied to the court for the money, and the proceedings on this bill of interpleader resulted in a decree passed on the 24th of February 1858, awarding to the city of Baltimore the entire *fee-simple* estate in the land condemned by the inquisition, and directing the money to be paid to the trustee in insolvency, to be by him distributed in that character to whomsoever might be entitled to the same.

The trustee of Tonge, then, under an order of the Circuit court for Baltimore county, sitting in insolvency, sold at public auction, on the 12th of May 1858, all the tract of land mill and improvements so owned by Tonge, subject to such rights as the city authorities had acquired by the condemnation aforesaid, and at this sale Geo. P. Kane, the appellant, became the purchaser thereof, for $8500, and was put in possession of the property, and on the 20th of November 1858, filed his bill against the appellees praying for an injunction to restrain them from injuring and destroying the dam to his mill, and from interfering with him in such use of the water of Jones' Falls for the running of his mill "as does not interfere with the use of the same by Mayor and City Council of Baltimore for supplying the said city with pure water." The

injunction was granted as prayed, and after answer filed, a motion to dissolve was entered and testimony taken. The allegations of the bill and answer, and the purport of the testimony, are sufficiently stated in the opinion of this court. At the hearing of this motion, the court below (LEE, J.) passed an order dissolving the injunction, from which the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Geo. W. Dobbin,* for the appellant argued:

1st. That the condemnation by the city, under the Act of 1853, ch. 376, is *limited* to such use and occupation of Jones' Falls as may be *necessary to supply the city with pure water. Redfield on Railways,* 114, 115, 116. 11 *Barb.,* 26, *The People vs. White.* 11 *Wend.,* 151, *Albany Street Case.* 5 *Paige,* 147, *Varick vs. Smith.* 4 *Hill,* 143, *Taylor vs. Porter.* 2 *Sandf.,* 98, *Embury vs. Conner. Harp. Law Rep.,* 189, *Dunn vs. City Council of Charleston.*

2nd. That the proof in the cause shows conclusively, that there was and is no necessity, whatever, for any purpose of supplying the city with pure water, to destroy the Rockdale mill dam, by means whereof the mill was operated at the time of and before the condemnation.

3rd. That the condemnation by the city, whilst it took from Tonge all the use and occupation of the stream, which is necessary for supplying pure water to the city, left in him all such use of it as did not injuriously interfere therewith, and that the appellant acquired by his purchase from the trustee in insolvency of Tonge, all the title to such use which Tonge had. 1 *Sumner,* 501, *United States vs. Appleton.* 12 *Mass.,* 160, *Story vs. Odin. Angell on Water Courses,* sec., 159. 1 *Md. Rep.,* 540, *White vs. Flannigain.* 7 *Md. Rep.,* 352, *McTavish vs. Carroll.* 2 *Md. Rep.,* 417, *Ely vs. Stewart, et al.* 5 *H. & J.,* 82, *Kilgour vs. Ashcom.*

4th. That equity has jurisdiction to restrain, in this

case, by the writ of injunction. 1 Md. Rep., 543, White vs. Flannigain. 7 Md. Rep., 413, Shipley vs. Ritter. 2 Md. Ch. Dec., 412, Lamborn vs. Covington Co.

5th. That the inquisition found, is so vague and uncertain, in the description of the land intended to be condemned for the use and occupation of the city, that the land cannot, with requisite certainty, be located by the terms of that description, and that the inquisition and condemnation founded thereon, are therefore void. 6 Gill, 154, Wilson vs. Inloes. 1 H. & G., 438, Thomas vs, Turvey. 10. G. & J., 10. Neel vs. Hughes. 2 Gill, 29, Balto. & Susq. Rail Road Co. vs. Compton.

H. R. Dulany, and G. L. Dulany, for the appellees argued.

1st. That according to the true construction of the Act of 1853, ch. 376, the Mayor and City Council of Baltimore are authorized, to acquire, by agreement or process of condemnation, any property which they may conceive expedient and necessary to promote the purpose mentioned in the Act, and to hold the same in fee-simple, for a term of years, or merely as an easement, as to them may seem best; and in case of a condemnation, the confirmation of the inquisition, and the payment, or tender, of the valuation thereby assessed to the owner of the property taken, entitle the corporation to the use, estate and interest in the same, as fully as if it had been conveyed by the owner.

2nd. Supposing the above construction to be correct, the Legislature, in passing the Act, did not exceed the limits of their legitimate powers. 1st. The only restriction imposed by the Constitution, (Art. 3, sec. 46,) upon the exercise of the right of eminent domain, is that a just compensation must be paid or tendered, in the first instance, to the owner of the property taken. The express mention of this limitation, excludes the supposition of the existence of any other. 2nd. In a State where there is a written constitution, the judiciary cannot invalidate an Act of the Legislature independently of any considerations drawn from the organic law, on the vague ground that it violates the dictates of

natural justice, or is contrary to the fundamental principles of republican government, and the teachings of political ethics. 21 *Penn. State Rep.*, 147, *Sharpless vs. Mayor & C. C. of Philadelphia.* 3rd. The Legislature is the sole judge of the *exigency* which justifies the taking of private property for a public use, of the *amount* to be taken, and the *quantity of estate* to be had therein, and a *fee-simple* may be acquired by *condemnation.* 10 *Law Reporter*, 441, 581, 490. 3 *Paige*, 45, *Beekman vs. Saratoga Rail Road Co.* 7 *Greenlf.*, 273, *Spring vs. Russell.* 9 *Barb.*, 350, *Harris vs. Thompson.* 19 *Barb.*, 168, *Hartwell, et al., vs. Armstrong, et al.* 15 *Barb.*, 627, *Rexford vs. Knight*, and same case affirmed on appeal in 1 *Kernan*, 308. 3 *Selden*, 314, *Heyward vs. Mayor & C. C. of New York.* 24 *Barb.*, 658, *Morris Canal Co., vs. Townshend.* 9 *Smedes & Marshall*, 430, *Arthur vs. Commercial Bank of Vicksburg.* 9 *G. & J.*, 509, *Tide Water Canal Co., vs. Archer.* The question of the *degree* of *necessity* is *always* for the Legislature to decide. 5 *G. & J.*, 429, *Glenn vs. Mayor & C. C. of Balto.* 4 *Wheat.*, 423, *McCulloch vs. The State of Maryland.* 4th. Courts are *very reluctant* to set aside an Act of the Legislature; every presumption will be made in its favor, and in a *doubtful* case it will be declared valid. 6 *Florida Rep.*, 610, *Cotton, et al., vs. Commissioners of Leon County.* 21 *Penn. State Rep.*, 164. 9 *Gill*, 304, *Baugher et al., vs. Nelson.*

3rd. But the question as to whether or not the estate taken was *necessary* to accomplish the *purpose* contemplated by the act, is not now an open one. It has been *conclusively* settled, 1st, by the confirmation of the inquisition of the jury by the Circuit court for Baltimore county. 1 *Md. Rep.*, 567, *Hamilton vs. Annapolis & Elk Ridge Rail Road Co.;* 2nd, by the decree of the Circuit court for Baltimore city, adjudging the fee-simple in the property condemned to the Mayor and City Council; 3rd, Tonge, or his trustee in insolvency, having *received* the condemnation money, he, and all persons claiming under him, are *estopped* from saying the city acquired a larger estate than was necessary for the pur-

pose intended.   6 *Hill,* 47, *Baker vs. Braman.*   3 *Comstock,* 511, *Embury vs. Conner.*

4th. That the powers and discretion conferred and vested by this Act, have not been transcended or abused by the city authorities.   1st. The Act itself must not be too *strictly* construed; the rules of construction, applicable to English railway companies, have not been domesticated by the courts of this State.   2nd. Where the power of determining upon the *necessity* of a measure or thing, is given to a municipal corporation, the courts will not interfere with its *judgment* in a particular instance, *at least,* unless it can be *clearly* shown that the corporation has exceeded the limits of its authority, or *grossly* abused the discretion vested in it.   1 *Gill,* 264, *Harrison vs. Mayor & C. C. of Balto.*   5 *G. & J.,* 429, *Glenn vs. Mayor & C. C. of Balto.*  3rd. *Necessary* does not mean physically impossible—like most words, it admits of all degrees of comparison, and is qualified by other words, in connection with which it may be used.   It is frequently employed as synonymous with "expedient," "conducive to," "promotive of," &c.   Wherever the means resorted to have a *tendency* to produce a certain end, in the propriety of the English tongue it *may* be said, that those means are *necessary* to accomplish that end.   4 *Wheat.,* 316, *McCulloch vs. State of Maryland.*  1 *Kent,* 253.   6 *Florida Rep.,* 629.   4th. The evidence shows that *absolute control* on the part of the city, over the water contained in the Rockdale mill dam is *necessary* for properly carrying out the purpose had in view.

5th. Admitting that the use of the water by the appellant, does *not in the least* obstruct or affect the city's supply, it does not follow that he would be *entitled* to such use.   If there is any surplus water, the corporation may rent it out; at any rate, a third person cannot claim to use it without the city's permission..  9 *Barb.,* 350, *Harris vs. Thompson.*  5 *Paige,* 146, *Varick vs. Smith.*  1 *Md. Rep.,* 553, *Hamilton vs. Annapolis & Elk Ridge Rail Road Co.*

6th. That the description in the inquisition of the land condemned is sufficiently certain.

LE GRAND, C. J., delivered the opinion of this court.

This is an appeal from an order of the judge of the Superior court of Baltimore city. The case made by the bill may be thus stated. A person of the name of Samuel D. Tonge had a leasehold interest in a piece of land in Baltimore county, through which flows a stream called "Jones' Falls." On this land and the stream a valuable merchant flour mill stood. Under the Act of 1853, chapter 376, entitled, "An Act to supply the City of Baltimore with pure water," the city caused that part of the land constituting the bed of the stream to be condemned, and the amount of the condemnation money was paid to those to whom it was decided to belong. Tonge having taken the benefit of the insolvent laws, his trustee exposed for sale the interest which still remained to his estate after the condemnation, and the appellant became the purchaser thereof for the sum of $8500. The bill alleges that immediately after the purchase he was put in possession of the property, and up to the period of the commission of the acts complained of, he was in the undisturbed and peaceable enjoyment of the same, using it for the manufacture of flour, for the grinding and delivery of which he is under heavy contracts. It is also alleged that James S. Suter, water-engineer to the Mayor and City Council of Baltimore, claiming to act under and by virtue of the aforesaid Act of Assembly, and the ordinance of said corporation for supplying the city with pure water, entered upon the dam belonging to the mill, then in the possession and use of the complainant, and forcibly and violently, and against his will and consent, opened and destroyed the sluice-gate in the dam, and thereby let off and discharged the water from the mill-dam, so that the mill can no longer be used, as before, for the manufacture of flour; and further, that since the sluice was opened and destroyed, the engineer has commenced and is now prosecuting the actual destruction of the whole of the dam, cutting away the wood-work and blowing up the abutments, so that when its destruction shall be completed it will be incapable of being rebuilt, as before, the present abutments being natural rocks of immense size, which

cannot be equally well replaced by any artificial structure. The bill states that a suit has been instituted against the dedefendants, in which will be tried and adjudicated the rights of the respective parties.    It avers, that the only use which the complainant makes of the water is, to cause it to pass over his water-wheel instead of passing over the breast of the dam, and that such use is made without the smallest impairment of its *quantity*, or *pollution* of its *quality*, and in proof that such use of the water of Jones' Falls is not injurious to the rights of the Mayor and City Council, the complainant avers, that the same use is made of said water by all the mills on the said stream, both above and below his mill, with the knowledge and consent of the Mayor and City Council, their engineer and agents, and no objection has been made, except in his case.  The bill states the insolvency of Suter, and suggests, that it may be probable, that as the Mayor and City Council of Baltimore is a corporation confined, in the exercise of its corporate powers, within specified limits, it may not be liable for acts done outside of those limits.    To this is added, that as the trespass is continuing in its nature and goes to the destruction of the dam as such, the defendants ought to be restrained from further acts of trespass until the suit at law shall have been determined, and be compelled to refrain from *interfering with such use by the complainant of the water of Jones' Falls, for running his mill, as does not interfere with the use of the same by the Mayor and City Council of Baltimore, for the supplying of the city with pure water.*  An injunction was accordingly ordered. The answers of the defendants exhibit no facts in response contradictory to those alleged in the bill, but claim the legal right to do what has been done, and what is contemplated to to be done, by virtue of the Act of Assembly, the ordinance of the city of Baltimore, and the condemnation.    Considerable proof was taken as to the boundaries of the land condemned, and the various water powers and their present uses on Jones' Falls.    There is not sufficient evidence in the record, going to show, *that the use by the complainant of the water interferes in any manner with the introduction of pure*

*water into the city.* The new water works are not now completed, and, according to the present plan of their construction, the water to be conveyed into the city is to be withdrawn from the stream at a point considerably higher up than the location of the complainant's mill.

The claim of the city depends upon the construction of the 46th section of the 3rd Article of the Constitution of the State, the Act of Assembly of 1853, chapter 376, and the condemnation under the inquisition. On the part of the city, it is contended, that the condemnation of the land was in absolute fee-simple, and that on ratification of the finding of the jury and payment of the money, the city is entitled to use it, and the water flowing over it, in such manner and for such purposes as to it may seem proper and judicious. To this extent the pretension must go, and be sustained, or it cannot avail in this case, as it is presented to us.

The clause in the Constitution is in these words:

"The Legislature shall enact no law authorising *private* property to be taken for *public* use without just compensation as agreed upon between the parties, or awarded by a jury, being first paid, or tendered, to the party entitled to such compensation."

The Act of 1853, chapter 376, authorises the city, by *purchase,* or, in case of inability to purchase with consent of the owner, to acquire title by condemnation of a jury, and the tender of, or payment of the valuation; but this authority is not given to the city for *all* purposes, but for *"the purpose of conveying water into the said city, for the use of said city, and for the health and convenience of the inhabitants thereof."* Under this privilege the city can acquire a right to the use of the water in perpetuity, but the *use* to which it is to be applied must be the one specified. In our opinion it is not competent for the Legislature to confer on the city of Baltimore, or other corporation, the power to take *private* property for any use but a *public* one; and the *particular* public use, in this case, is described fully in the Act of Assembly, and is observed in the finding of the jury, *"the conveying water into said city."*

The Legislature could not confer on the city a larger power than it possessed. The right of eminent domain, which under the Act of 1853, was, in part, conferred upon the city, cannot be more extensive than as it existed before the grant. The State has not, and therefore cannot confer, a power to take private property for any but a *public* use. In our opinion it has not done so in the present instance.

We think the complainant has the right to use the water in the manner it has been customary to use it at his mill, so far as that use may not interfere with the use of the same by the Mayor and City Council for supplying the city with pure water.

In the argument of this cause, some stress has been laid upon the decree passed by the Circuit court, which appears in the record. That decree was passed in the interpleader suit instituted by the Mayor and City Council, for the purpose of determining the respective rights of the parties in interest, to the money awarded by the inquisition. The decree in its terms declares that the Mayor and City Council of Baltimore "is entitled to a fee-simple estate in the property in the condemnation mentioned."

In our opinion, the decree did not alter or enlarge the rights of the city, acquired under the condemnation. That conferred upon the city, in perpetuity, the use and occupation of the stream, for *the purpose mentioned in the Act*, but left in Tonge "all such use of it as did not injuriously interfere therewith." This latter right, so far as it is consistent with the full and complete accomplishment of the purpose mentioned, could not be embraced within the condemnation. From these views, it will be apparent, that we are of opinion, the order dissolving the injunction was erroneous and ought to be reversed, and an order passed continuing the injunction.

These views are fully sustained by the following cases: *Albany Street Case*, 11 *Wendell,* 149; *Dunn vs. City of Charleston, Harper's Law Rep.*, 189; *The People vs. White*, 11 *Barbour, S. C. Rep.*, 26, and *Varick vs. Smith, 5 Paige,* 137, 146, 147.

Believing the principles adopted in these cases to be appropriately applicable to the one before us, we do not deem it important to inquire how far it may be true, as has been supposed, that there are cases in New York in conflict with those to which we have referred.

*Order reversed with costs,*
*and injunction continued.*

(Decided March 5th, 1860.)

TUCK, J., delivered the following dissenting opinion:

I propose, very briefly, to state wherein I dissent from the opinion of the court in this case.

Under the Constitution and laws, the Mayor and City Council of Baltimore have power to condemn, in fee-simple, land or water, if there is a necessity for so doing, in order to carry out the purposes of the Act of 1853. This was admitted by the appellant's counsel. That Act makes the city authorities judges of the expediency and necessity in the particular instance in which they may seek to assert their rights, and when they have made a condemnation, and it has been ratified by the proper court, the correctness of their judgment on that question cannot be reviewed by us. I deem it unnecessary to refer to the cases on the point, further than to say that, I think it fully sustained by some of those cited in argument.