ELIJAH GEORGE TAYLOR, and others *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Condemnation of land under the Code of Public Local Laws, Art. 4, Title, " City of Baltimore," sub-Title, " Water," to be used for a tunnel—Question whether damages for land Condemned for such purpose, were to be Estimated at the Surface value or not.*

Certain land in Baltimore County being required by the City of Baltimore for the purposes of a conduit for the introduction of water into the City, a jury of inquisition was held, in conformity with the provisions of the Code, for the purpose of ascertaining the amount to be paid by the City for the land in question, looking to the purpose for which it was to be held and used. The conduit in question was to be so constructed as to pass through said land at a distance below the surface of from 79 to 120 feet. The jury by their inquisition made a condemnation in perpetuity of said land "so far as may be necessary to construct, maintain and use under the same an underground conduit twelve feet in internal diameter for conveyance of

Taylor, *et al. vs.* Mayor, &c., of Baltimore.

water without any opening on" said land, "and without the right to enter upon or disturb the surface, except to clear away timber on the surface necessary to give an unobstructed view for engineering purposes during the construction of said conduit." Held :

> That the damages proper to be assessed in this case were not for the estimated value of the land at the surface, but that the jury should look to the purpose for which the land was to be condemned, and the manner and mode in which it was to be used and occupied, and thereupon estimate the damages.

Appeal from the Circuit Court for Baltimore County.

This was an appeal from the order of the Court below, overruling exceptions to the confirmation of the inquisition of the jury, and confirming said inquisition. The case is stated in the opinion of this Court.

The cause was argued before Bartol, C. J., Brent, Miller, Alvey and Robinson, J.

*Richard J. Gittings* and *John Carson,* for the appellants.

*James L. McLane* and *Wm. A. Fisher,* for the appellees.

Brent, J., delivered the opinion of the Court.

Under Article 4 of Public Local Laws, *2nd vol. Code,* title " City of Baltimore," and sub-title " Water," the Mayor and City Council have the power " from time to time to contract for, purchase, lease and hold to them and their successors in fee-simple, or for a term of years, any land, real estate, spring, brook, water and water-course, and also the right to use or occupy for ever, or for a term of years, any land, real estate, spring, brook, water and water-course, which they may conceive expedient and necessary for the purpose of conveying water into the said city for the use of said city, and for the health and convenience of the inhabitants thereof." *Sec.* 928. In pursu-

ance of this power, which it is conceded on all sides the Legislature of the State could rightfully confer, they have undertaken to introduce into the city a supply of water from the Gunpowder River. The conduit or aqueduct to be constructed for that purpose will pass through the lands of the appellants, at a distance below the surface varying from seventy-nine to a hundred and twenty feet. The parties not being able to agree upon the terms of sale, a jury of inquisition was summoned, who proceeded to assess and ascertain the amount in money to be paid by the city for the land in question, looking to the purpose for which it was to be held and used. *Secs.* 929, 931, 932. Their inquisition was returned to the clerk of the Circuit Court for Baltimore County, to be filed in his office and submitted to the Court for confirmation. *Sec.* 934. Objections to its ratification were filed by the appellants, but that Court, upon the hearing, overruled the objections and passed an order confirming the inquisition.

Since the decision of this Court in the case of the *W. & S. R. R. Co. vs. Condon*, 8 *G. & J.*, 448, the law was well settled in this State, that an appeal did not lie in cases of this description. But the Legislature deeming it wise to alter this rule, passed the Act of 1876, ch. 19, which gives the right of appeal, but limits it expressly to "matters of law."

The jury in this case, by their inquisition, made the following condemnation of the land in question: "And the use and occupation of which said second described parcel is wanted by the Mayor and City Council of Baltimore, for the purpose aforesaid, (for the introduction of water into said city,) in perpetuity, so far as may be necessary to construct, maintain and use under the same an underground conduit, 12 feet in internal diameter, for conveyance of water, without any opening on said second described parcel, and without the right to enter upon or disturb the surface, except to clear away timber on the sur-

face, necessary to give an unobstructed view for engineering purposes during the construction of said conduit." Upon this finding of the jury the appellants asked the Court below to determine, as a matter of law, that the measure of damages cannot be less than the fair market value of the land, estimated according to the value at the surface, and that the inquisition must be set aside if the jury had given only such damage as they thought would result to the land by the tunnel constructed in the manner described. This the Court refused, and it forms the subject of the first bill of exceptions.

The appellees filed a special exception to this prayer, upon the alleged ground that there was no evidence in the cause, that the jury did not allow the full value of the surface of the land described. They seem to have allowed very nearly at the rate of $500 an acre, which seems to be considered by witnesses as about the surface value, but some of the jurors do testify, that the valuation would have been larger than that returned, if the surface value had been adopted. So there is some evidence to support the prayer, and the special objection to it must therefore be overruled.

The question is then distinctly presented, was the jury bound to allow, as the measure of damages, the estimated value of the land at the surface, or could they look to the purpose for which the land was to be condemned, and the manner and mode in which it was to be used and occupied, and thereupon estimate the damages?

The Act of Assembly, to which we have first alluded, is very full and general in its language, and seems to furnish a satisfactory solution to this question. It will be noticed, that the power conferred upon the authorities of the city to purchase, &c., is in two aspects: The first is to purchase *in fee-simple, or for a term of years*, any of the property mentioned, and the second is to purchase *the right to use or occupy for ever, or for a term of years*, the

same enumerated property. It is apparent, therefore, that the Legislature contemplated that the city might require, according to the exigencies of the case, the absolute title to the surface, as for example, for the construction of reservoirs; and then again, the right only to use and occupy the land for tunnels and conduits. If it were otherwise, and it was designed that there should be a condemnation always of the surface, why, in addition to the power to condemn in fee, should the power also be given to condemn the right to use and occupy? A fair construction of the Act shows that the power has been conferred to subject such land, as it may be necessary to take, to precisely the use and occupation that may be necessary to accomplish the purpose and end designed,—that is, the introduction of a supply of water into the city limits. If the surface is not needed and cannot be used, there is certainly no justice in requiring the city to pay for it. The construction of their tunnel at the depth of seventy feet below it, leaves the land to be used and cultivated by the appellants, fully and unreservedly. Even had it been condemned, and the city required to pay its full value, its authorities could have exercised no right over it, either in the way of cultivation or leasing. Their use and occupation would be confined exclusively to a single purpose— the use and occupation necessary for the introduction of water. And it is for such use and occupation, that the Court below, when they rejected the prayer in question, believed the damages should be assessed, and in that view we concur. It carries out the purpose and intention of the law, under which these proceedings have been authorized, compensates the owners of the soil in ample damages, and requires the City of Baltimore to pay for all that it could legally acquire.

The doctrine which we have applied to this case, has been in principle recognized in the case of *Kane vs. Mayor and City Council of Baltimore,* 15 *Md.,* 240. In that

case the Court held, that the city could only acquire under a condemnation *such use and occupation* as was necessary for the purpose mentioned in the Act, under which the condemnation was had. · That is precisely all that the city can acquire in the present case, and it must follow as a necessary consequence, that it is all that the jury can be called upon or required to condemn. The damages to be allowed, are a compensation for what is taken, and are properly estimated upon that basis.

It is not necessary to refer more particularly to the American Cases, which have been cited on the part of the appellants, than to say we have found nothing in them which is in conflict with the views we have expressed. The cases of *Pinchin vs. London & Blackwell Ry. Co.*, 31 *Eng. L. & Eq.*, 253, and of *Sparrow vs. Oxfordshire Ry. Co.*, 2 *De G., Mc. & G.*, 108, require a more particular notice, as they were mainly relied upon in the argument, and were insisted upon as adjudications of the very question here involved. We do not so understand them. They are both decided under the English Lands Clauses Consolidation Act, and the questions arising in them depended upon the construction of its provisions, which are totally different from the Maryland Act, under which the proceedings in this case have been taken.

The remaining question to be decided, is the refusal of the Court to rule as a matter of law, that the land owners should be allowed damages for any inconvenience and annoyance, that it is probable they will be subjected to, in consequence of the close proximity of their dwelling house to the conduit, from blasting, and from the noise of the engine to be used in excavating.

This, as presented by the record, is a mere abstract question. There appears to have been no proof offered of any such probable annoyance to the appellants, and it is too well settled by the decisions in this State to admit of any doubt, that Courts will not rule upon questions of

law which can have no application to the evidence in the
case.   The only reference, which we find in the record, to
either of these causes as an element of damages, is in the
opinion of the Court, where it is stated that damages *had
been allowed* by the jury for the annoyance and inconve-
nience to which the appellants would be subjected "by
the blasting on the premises."    Even if this could be
taken as sufficiently showing, that evidence upon this
point was offered at the hearing below, it carries with it
the answer that the appellants have in fact been awarded
damages in this respect, and that they are consequently
in nowise injured by the refusal of the Court to grant
their prayer.

It results from what we have said, that we find no
error in the rulings of the Circuit Court, and the order
appealed from will be affirmed.

*Order affirmed.*

(Decided 23rd February, 1877.)