JOHN GREGG and JAMES GREGG *vs.* THE MAYOR
AND CITY COUNCIL OF BALTIMORE.

*Ultra Vires—Construction of sec. 8, of Ordinance No.* 131, *of
1874, of the City of Baltimore, for the Improvement of
Jones' Falls, in regard to the right to Surrender given by
that Ordinance, and the Liability of the City for refusing to
accept such Surrender—Eminent domain—Liability of the
city for Damages resulting from changing the Grade of
streets under said Ordinance, independent of any Liability
expressly created by said Ordinance—Obligation of parties
Injured thereby, to use proper Precautions themselves to
Prevent such injury—Measure of damages.*

Under the authority conferred by the Act of 1870, ch. 115, the
Mayor and City Council of Baltimore, adopted Ordinance No. 131,
of 1874, for the improvement of Jones' Falls, and the district
flooded by the freshet of July 14th, 1868. The *first section* of the
Ordinance directed the City Commissioner (among other things)
to *regrade* Centre street between certain points, such regrading to
be done in conformity with the general plan of the improvement
prescribed in the Ordinance. The *eighth section* provided, " that
any party or parties owning property or having rights to property
within what is termed ' the flooded district,' may surrender the
same, if it shall be so affected by any change of grade as to pre-
vent its use for its present purposes, and it shall be the duty of the
Commissioners for Opening Streets either to purchase the said
property for the Mayor and City Council of Baltimore at an equita-
ble price, or to condemn the same by the usual processes for con-
demnation of property for public use," &c. The plaintiffs owned a
lot of ground on Centre street, in the City of Baltimore, on which
were erected certain buildings, used by them as a tannery. A
portion of the lot next to Jones' Falls, on which were located two
of the tannery buildings, were condemned for the improvement of
said Falls, under the necessary proceedings, and the damages
awarded to the plaintiffs were paid to them by the city. New
buildings, in lieu of those so taken by the city, were erected by
the plaintiffs on another part of their premises. Centre street was

Gregg *vs.* M. & C. C. of Baltimore.

regraded in conformity with the general plan of improvement prescribed in the City Ordinance of 1874, No. 131. The effect of this regrading was to raise the bed of Centre street in the front of the plaintiffs' property. The plaintiffs claiming that their property had been so affected by the change of the grade of Centre street as to prevent its use for the purposes of a tannery, within the meaning of the *eighth* section of the Ordinance of 1874, and that they were entitled to surrender and be paid the full value thereof, offered to surrender the same, but the surrender was not accepted by the city authorities. In an action brought by them against the city, it was HELD:

1st. That the Mayor and City Council had no power under the Act of 1870, to pass the eighth section of the Ordinance of 1874, and the same was *ultra vires.*

2nd. That without a grant of power from the Legislature, the corporation had no lawful right to acquire property, even by the consent of the owner, not required for public use.

3rd. That the provisions of the said section could not be supported upon the principle upon which the provisions for a surrender contained in the ordinances for opening and condemning streets are upheld; the surrender and sale by the city under those ordinances, not being a taking of the property under the power of eminent domain, but simply a mode devised by the Ordinance for ascertaining the just compensation to be paid to the owner for the property actually taken for the public use.

4th. That said section gave the plaintiffs no right to surrender their lot to the city, nor was the latter bound, or competent to accept the same, and the refusal of the city authorities to accept the same, conferred on the plaintiffs no right of action.

5th. That before the Act of 1870, the city had not the power to change the grade of a street without the assent of the owners of property abutting thereon.

6th. That in carrying out the provisions of that Act, by the fourth section of which said restriction was removed, and by the first section of which provision was made for ascertaining and paying the damages resulting from the acts authorized, it was the duty of the city, to provide by ordinance for ascertaining the damages suffered by the proprietors, whose property fronted on the streets, or was affected injuriously by the change of grade, and to provide for awarding compensation for such damage.

7th. That their failure to make such provision in the Ordinance of 1874, No. 131, did not prevent the plaintiffs from maintaining their suit.

8th. That the plaintiffs were entitled to recover compensation for the damage caused to their property by the change of the grade of Centre street, without regard to the provisions of the eighth section of said Ordinance.

9th. That it was not necessary in order to their recovery, that the jury should find that the tannery property was so affected by the change in the grade of Centre street, as to prevent its use as a tannery.

10th. That while the plaintiffs were entitled to recover for the injury and damage to their property caused by the change in the grade of Centre street, it was their duty to use reasonable and proper precautions to prevent or diminish the injury, and to incur reasonable expense for that purpose. And while they would be entitled to recover for such reasonable and proper expense thus incurred, or rendered necessary, they were not entitled to recover for any injury which the jury might find could have been thus obviated or prevented.

11th. That the difference in the value of the property before and after the injury complained of, was not a safe or correct test of the measure of damages, as the value of the property might be affected by other causes.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the three following prayers:

1. That in deciding on the matters submitted for their determination, the jury are not to consider the proceedings of the Commissioners for Opening Streets, in reference to the condemning, widening and straightening Jones' Falls between Monument and Gay streets, offered in evidence, as in any way affecting the right of the plaintiffs to the use of the passage way, opening on

Centre street, except as to the portion thereof actually taken.

2. That if the jury find from the evidence that the plaintiffs were the owners in the year 1876, of the property known as the "Maryland Tannery," situated at the S. E. corner of Centre and Holliday streets, in the City of Baltimore, and still continue to be the owners thereof; that prior to the time of the taking of a portion thereof by the defendant in November, 1876, for the purpose of improving Jones' Falls, said property was improved with all the buildings necessary and proper to conduct a first-class tannery, and had been used for many years theretofore as a tannery; that by said defendant a portion of the land of said property and two of the said buildings, known as the "Beam House and Handling House," located on said portion, were taken away—the said houses were sold by said defendant; that at said sale the said plaintiffs became the purchasers of the materials contained in said houses, with the view and for the purpose of re-erecting them on another portion of said property; that there was sufficient unoccupied space on which to re-erect on said property the said two houses so taken away and sold, and that when so re-erected, the said tannery property would have been perfect in all its appointments, and could have been used as theretofore; and further believe, that the defendant, in the fall of 1877, by the regrading and filling up of Centre street, in the mode testified to by the witnesses, closed up the plaintiffs' gateway on said street, and thereby prevented the use of said property for the purpose of a tannery; and further find, that thereafter and before the institution of this suit, the said plaintiffs surrendered, or offered to surrender the same to the defendant, as provided for by the 8th section of the Ordinance of the Mayor and City Council of Baltimore, approved November 9th, 1874, and designated No. 131, then the plaintiffs are entitled to recover such

damages as the jury may believe from the evidence the said plaintiffs have sustained by the said conduct of the defendant, notwithstanding they may find from the evidence that the said 8th section of said Ordinance was repealed on the fourth day of October, 1878, by Ordinance approved on that day, numbered 86.

3. If the jury shall find for the plaintiffs under the Court's instruction, then the measure of damages which they are entitled to recover, is such sum as the jury may find from the evidence will compensate the plaintiffs for the injury inflicted on the tannery property of the plaintiffs by the act complained of.

And the defendant, offered the eight prayers following:

1. That under the provisions of the Public Local Law, applicable to the City of Baltimore, and of the Act of the General Assembly, passed in 1870, ch. 115, entitled "An Act to authorize the Mayor and City Council of Baltimore to provide for the improvement of Jones' Falls, within the limits of the City of Baltimore," the said Mayor and City Council are authorized and empowered to make such changes in the grade of the streets in said city, as shall in their judgment be necessary and requisite, for the proper construction of the works connected with the improvement of said Falls, which said Mayor and City Council may determine to construct, and that the plaintiffs are not entitled to recover in this action for any damage sustained by them, or any injury to their tannery property, mentioned in the declaration, consequential upon or caused by the change in the grade of Centre street, made by virtue of the provisions of the Ordinance of said Mayor and City Council, approved November 9th, 1874, and designated as No. 131, of the Ordinances of said year, and that the verdict of the jury must be for the defendant.

2. That there is nothing in the Act of the General Assembly of 1870, ch. 115, authorizing and empowering

. the Mayor and City Council of Baltimore to provide for the improvement of Jones' Falls, within the limits of said city, and to require any property, which, in the judgment of said Mayor and City Council, it may be necessary and advisable to acquire for the purposes of said improvement, which authorizes said Mayor and City Council, either to purchase at an equitable price, or to condemn by any process of condemnation, any property not required in the judgment of said Mayor and City Council, for the purposes of said improvement, but which may be so affected by any change in the grade of any of the streets of the city, which the said Mayor and City Council are by said Act authorized to make, as to prevent its use for the purposes for which then used; and that the 8th section of the Ordinance of the Mayor and City Council, approved November 9th, 1874, referred to in said declaration, is therefore *ultra vires* and void, and that the plaintiffs have no cause of action against the defendant, by reason of any of the provisions of said 8th section of the Ordinance of November 9th, 1874, or because of the failure or refusal of the Commissioners for Opening of Streets, to purchase at an equitable price or to condemn by any process of condemnation, the plaintiffs' property mentioned in the declaration, or because of the refusal or failure of the corporate authorities, or any of them, to accept a surrender of said property from the plaintiffs, as provided in said 8th section.

3. That the plaintiffs are not entitled to recover in this action for any injury to their property mentioned in the declaration, caused by the change of grade and raising the bed of Centre street, as therein stated, which injury the jury shall find might be obviated or prevented by the exercise of reasonable care on the part of the plaintiffs, that is to say, by such reasonable steps and expense on their part, as a prudent owner of property would take and incur for the protection and preservation of his property, threatened with or exposed to similar injury.

4. That if the jury shall find for the plaintiffs, they can only include in their verdict compensation for such injury to the plaintiffs' property, as they shall find to be the direct and necessary consequence of the change in the grade of Centre street, mentioned in the declaration, and that they are not at liberty to include in the amount of damages to be awarded, compensation for any injury to the plaintiffs' said property, or any inconvenience or disadvantage, or increased expense, to which the plaintiffs may be subjected in making use of their said property in consequence of the condemnation and taking of a portion of said property for the purposes of improving Jones' Falls, or in consequence of the necessary removal of part of the plaintiffs' buildings situated on said property, and the necessity of locating them elsewhere on account of said condemnation and taking, and that for all such damage, injury, inconvenience and additional expense, consequent upon such condemnation and taking, the plaintiffs must be presumed to have been sufficiently compensated in the condemnation proceedings, and are not entitled to claim to be compensated again in this present action.

5. That the plaintiffs can only recover in this action by virtue of the provisions of the 8th section of the Ordinance of the Mayor and City Council, approved November 9th, 1874, referred to in the declaration, and that in order to entitle the plaintiffs to claim the benefit of said section, and before the jury can find a verdict for the plaintiffs, the jury must find that the tannery property of the plaintiffs, and which the plaintiffs offered to surrender to the city, was in fact so affected by the change in the grade of Centre street, mentioned in the declaration, as to prevent its use as a tannery, and that it will not be sufficient to entitle the plaintiffs to a verdict, that the jury shall find that the value of said property for the purposes of a tannery has been simply lessened; (provided that said

property is reasonably sufficient for that purpose;) or that it cannot be advantageously or conveniently operated as a tannery; (provided it is reasonably sufficient for that purpose;) or that in order to admit of the continued and profitable use of said property as a tannery, the plaintiffs would be put to the expense of making alterations and of providing a new mode of ingress and egress to and from said property, unless the jury shall further find that the cost of said necessary alterations is greater than the value of said property would reasonably justify.

6. That if the jury shall find that in the proceedings of the Commissioners for Opening Streets for the opening of Jones' Falls, between Monument and Gay streets, by virtue of the Ordinance of November 9th, 1874, No. 131, and the powers therein vested in the Mayor and City Commissioner, as Commissioners for the improvement of said Falls, the sum of $9464.15, was awarded by said Commissioners for Opening Streets, as damages to the plaintiffs for the fee simple interest in the strip or portion of the plaintiffs' property immediately on the line of the Falls, condemned and taken for the purposes of said improvement, and for the improvements partly lying without the strip or portion of the plaintiffs' property so condemned and taken, and for the brick covered passage and gateway on Centre street, designated on Plat A, filed with said proceedings, and not contained within the lines of the strip or portion of property condemned and taken, and that from said action and award of said Commissioners, the plaintiffs took no appeal, but that said award of $9464.15, was actually paid to and accepted by the plaintiffs, then the plaintiffs are not entitled to recover in this action for any loss or injury consequent upon the subsequent closing of said passage and gateway by the change in the grade of Centre street mentioned in the declaration.

7. That if the jury shall find that by the construction of an area way, on Centre street, along the side of the

plaintiffs' building on said street, such as is authorized to be constructed by the Ordinance of the Mayor and City Council of Baltimore, any injury to the plaintiffs' building, resulting, or likely to result from the lateral pressure against the exterior wall of said building of the earth in the bed of said street, as raised in pursuance of the Ordinance of November 9th, 1874, referred to in the declaration, or from the diminution of light in the basement vat room of said building, would be obviated or remedied, then the measure of damages to be awarded to the plaintiffs for said injury, would be the cost of constructing such area way.

8. That if the jury shall find for the plaintiffs the measure of damages which the plaintiffs are entitled to recover, is such sum as the jury may find that the plaintiffs would be required to expend in order to provide a suitable means of ingress and egress to and from the tannery property and yard, in the plan of the former entrance on Centre street, and which has been closed and rendered useless, if the jury shall so find by the raising of the grade of Centre street, as mentioned in the declaration, and for the protection and preservation of the plaintiffs' building on Centre street, and the restoration of the necessary light on said building, of which said building may have been deprived by the raising of Centre street as aforesaid.

The Court (BROWN, J.,) granted the plaintiffs' first prayer, and their second prayer in connection with the third, fourth and fifth prayers of the defendant, which were also granted, and refused to grant the defendant's first, second, sixth, seventh and eighth prayers, and the plaintiffs' third prayer, and instructed the jury as follows:

"If the jury shall find for the plaintiffs under the Court's instruction, then the measure of damages which they are entitled to recover is the difference in value of the property of the plaintiffs in question at the time of the

injury done to it by the defendant by changing the grade of Centre street, and the value of said property after the injury to it and caused by such change of grade."

The plaintiffs excepted, and the verdict and judgment being rendered against them, appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON and IRVING, J.

*Luther M. Reynolds,* and *Orville Horwitz,* for the appellants.

*James L. McLane, City Counsellor,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

By the Act of Assembly of 1870, ch. 115, entitled "An Act to authorize the Mayor and City Council of Baltimore to provide for the improvement of Jones' Falls, within the limits of the City of Baltimore," the appellees were "authorized to make such improvements in connection with Jones' Falls as in their judgment were desirable; and for that purpose to change the course, lines and boundaries of the stream, in whole or in part; to widen and deepen the same,    *    *    *    *    *    *    and generally to do all such things, and exercise all such powers as in their judgment shall be necessary for the accomplishment of any plan of improvement that may be adopted."

The *second section* of the Act authorized the appellees "to acquire all necessary land and other property, and to provide for the ascertainment of the value of all property and rights of property which they are thus authorized to acquire; and also to ascertain whether any, and what amount, in value, of damages will be caused by the construction of said works of improvement."

The *fourth section* authorized the appellees "to make such changes in the grades of the streets in the City, as

shall in their judgment, be necessary and requisite for the proper construction of the works connected with the improvement of Jones' Falls ; and it shall not be necessary, in order to make such changes in the grades of said streets, to obtain the assent of any of the proprietors of the ground fronting on said streets, or affected by such changes."

Under the authority of this Act, the appellees adopted *Ordinance No.* 131 of 1874, for the improvement of Jones' Falls and the district flooded by the freshet of July 14, 1868.

The *first section* of the Ordinance directed the City Commissioner (among other things,) to *regrade* Centre street, between certain points, such regrading to be done in conformity with the general plan of the improvement prescribed in the Ordinance.

The *eighth section* provided, that " any party or parties owning property or having rights to property within what is termed '*the flooded district,*' may surrender the same if it shall be so affected by any change of grade as to prevent its use for its present purposes, and it shall be the duty of the Commissioners for Opening Streets, to either purchase the said property for the Mayor and City Council of Baltimore, at an equitable price, or to condemn the same by the usual processes, for condemnation of property for public use," &c., &c.

The appellants were the owners of a lot of ground situated on the west side of Jones' Falls, and binding on the south side of Centre street and the east side of Holliday street. The property had for many years been used by the appellants as a *tannery*, and was improved with the necessary buildings and appliances for the prosecution of that business. The improvements consisted mainly of a long two story brick house on the south side of Centre street called the "reel house," a large bark-house on Holliday street, a beam-house, and handling-house on the

Falls,—with vats, engine and other machinery: The value of. the whole property as a tannery was estimated by the witnesses at from $20,000 to $25,000.

It appears by the proof that the heavy flood of 1868, caused a temporary interruption to the tannery, which never worked to its full capacity afterwards. Sometime before the passage of the Ordinance of 1874, the appellants had determined to close up the business, and did do so in September 1875. As testified by James Gregg, one of the appellants, the discontinuance of the business was caused by the information that a part of their property would be taken, for the widening of the Falls.

The plan of improvement decided on under the Ordinance, required the taking of a portion of appellants' lot next the Falls, on which were located two of the tannery buildings, viz., the "beam house" and the "handling house." The necessary legal proceedings were had, and in November 1876, the amount awarded to the appellants $9464.15—was paid. The appellants became the purchasers of the old materials of the houses required to be removed from the part of the lot thus taken by the city, and removed the same, and put up the "*beam house*" and "*handling house*" on another part of the premises.

When the retaining wall of the Falls had been completed, in the autumn of 1877, the City Commissioner commenced the work of regrading Centre street as prescribed by the first section of the Ordinance, and completed it in the spring of 1878. This change of grade consisted of a fill of $6\frac{1}{2}$ *feet* at the west side of the falls, and thence descending gradually to Holliday street, the whole distance being 180 feet, and the effect was to raise the earth against the wall of the "*reel-house*" from nothing at Holliday street to $6\frac{1}{2}$ feet at the falls. At the east end of the reel-house was a gateway, which, according to the testimony, was the principal entrance to the tannery. This gateway was closed, and rendered useless by the

change in the grade of Centre street. The witnesses for the appellants testified, that the effect of the change of grade, was that the earth pressing against the wall of the reel-house had bent it inward, so as to render it unsafe, and likely to fall when using the rolling machinery in the second story, and the windows in the first story were darkened, so as to prevent the men from properly working therein; and they further testified that the property had been rendered useless as a tannery.

The gateway on Centre street was used for ingress and egress to and from the interior enclosure of the tannery, for hauling hides and hauling away leather, also refuse bark and ashes from the millhouse; there were also five large doors for the admission of carts and wagons on Holliday street, opening into the bark house, which was a frame structure, partially open in the rear and on the inner side, having a brick front wall on Holliday street, the roof being supported by wooden posts at the sides, and another row down the centre of the house or shed. The millhouse at the corner of Holliday and Centre streets, also had its own entrance from the street. Testimony was offered on the part of the appellees by an experienced master-builder or carpenter, that the wall of the "reel-house" could be entirely relieved of the lateral pressure of the earth on Centre street, and the light in the "reel-house" be restored, by constructing an area way along the wall, as is permitted by the Ordinances of the City, which was perfectly feasible, and that the entire cost of such an area would not be more than $566. The same witness also testified that he had examined the bark-house, and that it was entirely feasible for the plaintiffs to construct a roadway through it twelve feet high and twelve feet wide—that the house as it now is will contain 1358 cords of bark, and that such a roadway as described would take off the space of only 128 cords, that the roadway would cost the plaintiffs to build it but $650, and when

built, would afford all the facilities for ingress and egress to and from the tannery, that the gate on Centre street would give.

Testimony in rebuttal was offered by the plaintiffs that the effect of making a roadway through the bark-house, as indicated by defendant's witness, would increase the cost of filling the house one-third, and increase the cost of removing the bark from the same house to the mill one-third also. Evidence was also offered by the plaintiffs, by B. F. Deford, an experienced tanner, to the effect that the raising of Centre street had destroyed the property for the purposes of a tannery, it had closed up the gate on that street, that the tannery could not be operated without that gate, inasmuch as there was no other way of going in or out of it. The same witness also testified, that if a cartway was made through the bark-house, its capacity would be so lessened that the business could not be carried on profitably. It would require storage room for 1500 cords of bark, which the house now had, and that a cartway through it fifteen to sixteen feet wide would reduce the capacity to 1000 cords or thereabout, with which amount the tannery could not be profitably carried on ; and if a house to hold the other 500 cords were obtained across the street or elsewhere, it would necessitate the expense of keeping a horse and cart to haul the bark from the detached house to the tannery.

The appellants claimed that their property had been so affected by the change of grade of Centre street as to prevent its use for the purposes of a tannery, within the meaning of the *eighth section* of the Ordinance of 1874, and that they were entitled to surrender and be paid the full value thereof, and offered to surrender the same, but the surrender was not accepted by the City authorities, whereupon the present suit was brought by the appellants on the 6th day of July 1878.

The *eighth section* of the Ordinance of 1874, No. 131, was repealed on the 4th day of October 1878.

At the trial of the case in the Court of Common Pleas, the appellees contended, 1st. That under the Public Local Law applicable to the City of Baltimore, and the Act of 1870, the appellees were authorized to make such changes in the grades of streets, as in their judgment were necessary, for the work of improving Jones' Falls, and that the plaintiffs were not entitled to recover in this suit for any damages sustained by them, or any injury to their tannery property consequential upon or caused by the change in the grade of Centre street. This proposition was presented by the appellees' *first* prayer, which was rejected. 2nd. That the change in the grade of Centre street, and the widening of the falls being provided for in one and the same Ordinance and by the Act of 1870, were parts of the same work, and were covered by the award of damages in the condemnation proceedings. This proposition was asserted in appellees' *sixth* prayer, which was refused. 3rd. That under the Act of 1870, the appellees were not authorized or empowered to adopt the *eighth section* of the Ordinance of 1874, No. 131,—that the provisions contained in that section were *ultra vires* and void, and consequently that the plaintiffs had no cause of action by reason of anything contained in that section, or because of the failure of the appellees to accept a surrender of the property from the plaintiffs. This proposition was contained in the appellees' *second* prayer, which was rejected.

By the appellees' *fourth prayer*, which was granted, the jury were instructed that if they should find for the plaintiffs, they could only include in their verdict compensation for such injury to the plaintiffs' property as was the direct and necessary consequence of the change in the grade of Centre street; and that they were not at liberty to include in the amount of damages to be awarded, compensation for any injury to the plaintiffs' property, or any inconvenience, disadvantage, or increased expense to which the plaintiffs may have been subjected, in consequence of

the condemnation and taking of a portion of their property for the purpose of improving the Falls, and in consequence of the necessary removal of the buildings located on the property so taken, and the necessity of locating them elsewhere; and that for all such inconvenience and additional expense consequent upon such condemnation and taking, the plaintiffs must be presumed to have been sufficiently compensated in the condemnation proceedings. This instruction was clearly right, and no objection has been made to it by the appellants.

The *second* prayer of the appellants was granted, in connection with the *third, fourth* and *fifth* prayers of the appellees, which were also granted, and the error assigned by the appellants is to the granting of the *third* and *fifth* prayers of the appellees, and also to the ruling of the Court below, on the question of the measure of damages.

The theory of the appellants' *second* prayer, and the ground on which they sought to maintain the suit, was that their property had been so affected by the change in the grade of Centre street, as to prevent its use as a tannery; and that in consequence thereof, they had a right to surrender the same to the appellees, and to claim to be paid an equitable price therefor under the 8*th* section of the Ordinance, notwithstanding that section had been repealed. That prayer was granted by the Court of Common Pleas, as qualified however by the *third* and *fifth* prayers of the appellees, which seem to have been intended to instruct the jury, 1st, that it was the duty of the appellants to use reasonable care and precautions to prevent, or diminish the injury to their property from the act of the city authorities; and *secondly*, that to entitle the plaintiffs to recover, the jury must find that the property had been in point of fact, so affected by the regrading of Centre street, as to prevent its use as a tannery.

This last proposition we understand, was intended to be expressed by the appellees' fifth prayer; though its phraseology renders its meaning somewhat obscure.

The theory upon which the case was placed below, by the ruling of the Court, was that the *eighth* section of the Ordinance was passed in the lawful exercise of the powers of the City, and was therefore valid and binding.

After a careful consideration of this question, we are of opinion that the Mayor and City Council had no power under the Act of 1870, to pass the *eighth* section of the Ordinance, and the same was *ultra vires.* It is very clear that the Act of 1870 conferred no express power upon the city to acquire title, either by purchase or by condemnation, to any property except such as might be required for the purpose of the contemplated improvement. Without such a grant of power from the Legislature, the corporation had no lawful right to acquire property, even by the consent of the owner, not required for public use. The eighth section of the Ordinance provides for taking by condemnation, property not so required. Which it is clear the city had no power to do. *Kane vs. M. & C. C. of Balto.*, 15 *Md.*, 240.

The provisions of the 8*th* section of the Ordinance under consideration have been likened to those contained in the Ordinances for opening and condemning streets, in which it has been provided that where it is necessary that a part only of a lot, &c. shall be taken for the bed of the street, the owner may surrender the whole, and claim compensation therefor, &c. The validity of those provisions has been upheld by judicial decisions, but upon the express ground that in such case the property is taken *by the consent* of the owner, and that the surrender by the owner of the fragments or portions of the lot, not required for the bed of the street, and the sale thereof by the city was not a taking of the same under the power of eminent domain ; but was simply a mode devised by the Ordinance, for ascertaining the just compensation to be paid to the owner for the property actually taken for the public use. *M. & C. C. of Baltimore vs. Clunet*, 23 *Md.*, 449.

Gregg *vs.* M. & C. C. of Baltimore.

The provisions of the *eighth* section of the Ordinance of 1874, cannot be supported on this principle. By that section the city asserted the right of acquiring, either by purchase or *condemnation* property not required for the public use, or essential for making the improvement authorized by the Act of 1870.

That section was therefore *ultra vires* and void. It gave to the appellants no right to surrender their lot to the city; nor was the latter bound, or competent to accept the same, and the refusal of the city authorities to accept the same, conferred on the appellants no right of action.

Their right to maintain the suit, rests upon other grounds. They seek to recover damages for injury to their property caused by regrading Centre street. Are they entitled to maintain such action? This depends upon the provisions of the Act of 1870.

It was expressly decided in *Mayor & C. C. of Cumberland vs. Willison,* 50 *Md.,* 138, 148, that in the absence of legislative provision, "municipal corporations acting under authority conferred by the Legislature to make and repair, or to grade, level and improve streets, if they exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner whose lands are not actually taken, for consequential damages to his premises, even though in grading and leveling the street, a portion of the adjoining lot, in consequence of the removal of its natural support, falls into the highway, and the same immunity exists if the street be embanked or raised so as to cut off, or render difficult the access to the adjacent property, and this too, although the grade of the street had been before established, and the adjoining property owner had erected buildings, or made improvements with reference to such grade."

That case has been relied on by the appellees to support the proposition contained in their first prayer before referred to, which it is contended, ought to have been granted, and which denied to the appellants all right of action.

In our opinion the improvement contemplated and authorized by the Act of 1870, was by the express provisions of that Act taken out of the rule established by the decided cases, and laid down in *Willison's Case* above cited. Before the passage of the Act, the city had not the power to change the grade of a street without the assent of the owners of property abutting thereon. The Act of 1870 removed that restriction, and by its *fourth* section authorized changes in the grade of streets, necessary for the proposed improvement of the Falls, to be made "without the assent of any of the proprietors fronting on said streets or affected by such change." But the Legislature being aware that very great and important changes might be necessary in order to complete the proposed improvement, provided by the *first section* of the Act, that the Mayor and City Council should have power "*to ascertain whether any and what amount, in value, of damages will be caused by the construction of the aforesaid works of improvement in connection with Jones' Falls, or any of them, to the owner or possessor of any property, or rights of property, within the said City, for which said owner or possessor ought to be compensated,*" and to provide for the payment of such damages.

The power thus conferred upon the appellees, imported duty and obligation as was decided in *Marriott's Case,* 9 *Md.*, 160: In carrying out the provisions of the Act, it was the duty of the appellees to provide by Ordinance for ascertaining the damages suffered by the proprietors whose property fronted on the streets, or was affected injuriously by the change of grade, and to make provision for awarding compensation for such damage. Their failure

to make such provision in the Ordinance of 1874, No. 131, does not prevent the appellants from maintaining their suit.

It follows that they were entitled to recover compensation for the damage caused to their property by the change in the grade of Centre street, without regard to the provisions of the *eighth section* of the Ordinance, and it was error to grant the *fifth prayer* of the appellees, which, apart from the objection to its phraseology, was clearly erroneous in instructing the jury that the plaintiffs "could only recover in this action, by virtue of the eighth section of the Ordinance of 1874, and that before the jury could find a verdict in their favor, they must find that the tannery property was in fact so affected by the change in the grade of Centre street, as to prevent its use as a tannery," &c.

As to the *third* prayer of the appellees, which was granted, we may observe that while the appellants are entitled to recover for the injury and damage to their property, caused by the change in the grade of Centre street, it was their duty to use reasonable and proper precautions to prevent or diminish the injury, and to incur reasonable expense for that purpose, and while they would be entitled to recover for such reasonable or proper expense thus incurred or rendered necessary, they are not entitled to recover for any injury which the jury might find, could have been thus obviated or prevented.

This proposition was no doubt intended to be expressed in the appellees' *third prayer*, but its phraseology is not free from objection ; its defects may however be corrected upon a second trial of the case.

No objection has been suggested by the appellants to the *fourth* prayer of the appellees, which was granted.

As to the measure of damages, the instruction given to the jury, seems to have been based on the theory that the rights of the parties were to be determined by the pro-

visions of the eighth section of the Ordinance. We think the difference in the value of the property before and after the injury complained of, is not a safe or correct test of the measure of damages, as the value of the property might be affected by other causes. The correct instruction on this subject, is that asked for in the appellants' *third* prayer, taken in connection with and modified by the legal proposition before stated, in disposing of the appellees' *third* prayer, with reference to the obligation and duty resting upon the appellants to use reasonable precautions to diminish or prevent the damage.

Being of opinion that there was error in the rulings of the Court below, in the particulars before stated, the judgment will be reversed and a new trial ordered.

*Reversed and new trial.*

