## THE CONSOLIDATED GAS COMPANY *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE ET AL.

*Assessment for Taxation of Easement of Gas Company in City Streets*
*— Valuation of Easement—Evidence of Experts—Practice.*

In assessing for the purpose of taxation the value of the easement of the Consolidated Gas Company to lay its mains in the streets of Baltimore City, it is not proper to take into consideration as an element of the value of the property of the company either its bonded indebtedness or the interest paid on the bonds and the dividends on the stock and then capitalize the same.   Under Code, Art. 81, the bonded indebtedness of a corporation is valued and assessed for taxation to the owners thereof in the counties where they reside.

The value, for the purposes of taxation of the easement of the Gas Company to lay its mains in city streets, cannot be ascertained by estimating by the unit rule or otherwise the gross value of all the property of the company and then, after eliminating the other classes of property, treating the residuum as the value of the easement.

Upon an appeal to the Baltimore City Court from an assessment for taxation made by Appeal Tax Court, the members of that Court may be asked what methods they used in arriving at the valuation.

The assessment for taxation of the easement of a gas company to lay mains in streets, is not rendered unequal by the fact that it is not in proportion to the valuation of other real property, since there is no similarity between the value of ordinary lots of ground and an easement to lay mains in city streets.

One who has been a special student of taxation, who has made a valuation of the easement of public service corporations in other cities, and who is acquainted with the mileage and size of the mains of the Gas Company in this case, and knows what its earnings have been, is entitled to testify as an expert as to the value of the easement to lay such mains, although he has no knowledge as to the sales of real estate in the city.

The value of an easement in land does not depend upon the market value of property in the vicinity, inasmuch as the use to which a franchise permits an easement to be put is an essential element to be considered in placing a value on an easement. And the value of an easement may exceed the fee simple value of the land occupied.

Upon an appeal by a property owner from an assessment for municipal taxation, it is within the discretion of the trial Court, to require the municipality to submit instructions setting forth the standard of valuation relied upon, and no appeal lies from its refusal so to do.

*Decided February 13th, 1907.*

Appeal from the Baltimore City Court (SHARP, J.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Edgar H. Gans* and *W. Calvin Chesnut,* for the appellant.

*Edgar Allan Poe* and *Sylvan Hayes Lauchheimer* (with whom was *W. Cabell Bruce* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court

This is an appeal from an order of the Baltimore City Court adjudging and ordering that an assessment of $6,000,000 be imposed for the year 1906 on the mains and pipes of the Consolidated Gas Company of Baltimore City, in and under the streets and highways in Baltimore City, in addition to the assessments of $1,127,075 and $158,000 for mains and service pipes respectively, previously imposed. In the year 1904

an assessment of $6,000,000, in addition to the then existing assessment of $4,026,997, upon the tangible property of the company, was imposed by the Appeal Tax Court of Baltimore City for the year 1905, in these words: "Additional assessment on mains, pipes, and other construction, located in, on or over public highways of Baltimore City, so as to include the valuation of the easement enjoyed by said company in said highways $6,000,000."

The validity of this assessment was before this Court in the case of the *Consolidated Gas Company* v. *The Mayor and City Council of Baltimore*, reported in 101 Md. 542, in which it was held that "the property or estate which the Gas Company has in the highways of Baltimore City is an easement which may be properly assessed to the company as real estate," but it was further held in that case that the assessment was irregular and invalid, 1st, because it appeared from the record that the Appeal Tax Court had charged the Gas Company with the amount of its bonded indebtedness in ascertaining the value of its property for taxation, which under the Maryland statutes it was without authority to do; and, 2nd, because it also appeared from the record that the valuation had been imposed by an arbitrary and capricious method, instead of by the exercise of such judgment as the law contemplates shall be exercised by an assessor, and that such valuation could not be regarded as an assessment at all. After this decision the Appeal Tax Court abated the assessment thus declared to be invalid, and after due notice to the Gas Company of its purpose to reassess said company for the year 1906 for its pipes, mains and structures located in the streets and highways of the city, made an abatement of $4,565 upon 3.58 miles of three inch mains, abandoned by the Gas Company since 1905, and entered a new assessment in the following words: "Additional assessment on mains and other structures attached to and located in or under the roads, ways, and highways in Baltimore City (including 22.993 miles of new mains), $6,000,000." From this action of the Appeal Tax Court, the Gas Company appealed to the Baltimore City Court, which

action was affirmed by said Court in the order appealed from in this case.

Twenty-six exceptions were taken to the rulings upon evidence, and eleven prayers were submitted by the Gas Company, all of which were refused except the 7th, which was granted. The counsel of the city declined the request of the company that they should formulate and submit prayers outlining their standard of valuation of the easement in question, whereupon the Gas Company moved the Court to require the submission of such prayers, which the Court overruled, and the 27th exception was taken to the overruling of this motion, and the refusal of the prayers of the Gas Company.

It has been decided in *Mayor* v. *Bonaparte*, 93 Md. 159, that this Court cannot be required or allowed to sit as a board of review to revise the amount of the valuation placed by tax officials upon property for the purposes of taxation, and this was repeated in 101 Md., *supra.* We have therefore no warrant for interference in this case upon that ground, however great the apparent magnitude of the interests involved.

After a very careful reading of the record and the able briefs of counsel, we have reached the conclusion that the order of Court affirming the action of the Appeal Tax Court and imposing an assessment of six million dollars for the year 1906 on the mains and service pipes of the Consolidated Gas Company of Baltimore City attached to and located in, on or under the roads, ways, and highways in Baltimore City, in addition to the assessments previously imposed for mains and service pipes respectively upon said company for the year 1906, must be reversed for error in the rejection of the fourth and eighth prayers, which are as follows:

"4th. The petitioner prays the Court to rule as matter of law that the opinions as to the value of the mains and pipes of the Gas Company, including the easement therein in the streets of Baltimore City, as expressed by the witnesses Purdy and Bemis, are inadmissible, and must be disregarded by the Court, as the method of calculation of the value of said mains and pipes and easement by said witnesses, is substantially the

same as the method adopted by the Appeal Tax Court in the valuation of said property for the year 1905, which method has been declared illegal by the Court of Appeals."

8th. "The petitioner moves the Court to strike from the record all expressions of opinion made by the witnesses Purdy and Bemis in regard to the valuation of the mains and pipes of the Gas Company, including the easement therewith associated, on the ground:

1st. That said witnesses not having any knowledge of the value of real estate in Baltimore City were incompetent to express an opinion as to the value of said mains and pipes and easement; and

2nd. Because said expressions of opinion by said witnesses were based on a method of computation of value which is not warranted by Maryland statutes in regard to taxation of the property of corporations."

It will be seen later on that the error in the rejection of the 8th prayer has to do solely with the 2nd ground therein stated. The method pursued in the former case was condemned by this Court because under existing Maryland statutes, "the Appeal Tax Court was without authority to charge the Consolidated Gas Company with its own outstanding obligations" in ascertaining the value of its property for taxation, as it had done to the amount of ten millions and fifty thousand dollars.

For the purpose of comparison of the methods adopted in the two cases we have reproduced them here, as they appear in the respective records.

METHOD IN FIRST CASE, AS TESTIFIED TO BY JUDGE LESER.

(See Record in first case, page 23, etc.

| | |
|---|---:|
| Capital stock (10,700 shares at $70) | $ 7,500,000 |
| Bonds (7,000,000 at $110) | 7,700,000 |
| Certificates of Indebtedness ($1,500,000 at $90) | 1,350,000 |
| Bonds (4½ per cent) $1,1000 | 1,000,000 |
| Total value of assets of Gas Co. | $17,550,000 |
| From this they deducted assessed valuation of real estate in Baltimore City and county allowing liberally for margins | 4,300,000 |
| Leaving residum. | $13,250,000 |

From this they deducted their valuation of the persoual
property.................................................................................    1,250,000

Leaving........ ..... ..........................  ......................$12,000,000
This sum they considered represented the company's franchise
derived from the State and also the easement in the streets.
They, therefore, divided it in half, making an assessment for
the easement of........ .......................................................$ 6,000,000

METHOD IN PRESENT CASE AS TESTIFIED TO BY PURDY AND DEMIS.
(See Record, pages 195-6.)

Miles of Mains and pipes, Baltimore City...............................    478,492
Miles of mains and pipes, Baltimore County..........................    49,201
                                                                          _____
                                                                          527,693

9.33 per cent outside City.  90.67 per cent in City.
Stock issued, 107,710 shares.

Value of City real estate exclusive of mains and services........$ 2,843,418
Value of real estate outside the City.....................................    262,766
Value of personal estate...................................................    879,458
                                                                          _____
Total value of personal property and real estate exclusive of
mains and services........................................................$ 3,985,642

Divided Profits.

Interest........................................................................$    497,570
Dividends.....................................................................    430,840
                                                                          $    928,410
Total value of company's property 1905...........................$    928,410
Capitalized at 5 per cent........................................... 18,568,200
Real estate and personal property exclusive of mains and serv-
ices ...........................................................................    3,985,642
                                                                          _____
Total mains, services and easement......................$14,582,558
Deduct 9.33 per cent for proportion outside City.....    1,360,552
                                                                          _____
Value mains, services and easement in City...................$13,222,006
Former assessment of mains, services......................    1,285,035
                                                                          _____
Increase.....................................................  ....$11,936,971

To ascertain the assessed value after the assessment is in-
creased and a tax levied on new assessed value, the present
value must be diminished by such an amount that the as-
sessed value will coincide with market value when subject
to the increased tax.

When the divided profits are capitalized at 5 per cent and the
tax rate is 2.235 the increase in the assessed value must be
reduced to 69.1 per cent of the present value.

Increased value above former assessment........................... 11,936,971
69.1 per cent of above increase in the true increase of assess-
ment................................................................................8,248,446.9
Former assessed value of mains and services......................    1,285,035
                                                                          _____
True assessed value of mains, services and easement.............    9,533,481

In the first case the stock and certificates of indebtedness were reckoned at their respective market values and the resulting aggregate was $17,550,000 as the total value of the assets of the Gas Company.    In the present case, Mr. Purdy explained in his testimony in detail how he and Mr. Bemis arrived at their valuation.    He ascertained first from the company's report to the State Tax Commissioner, and from the agreed statement of facts filed in the case, the interest paid on the bonded indebtedness, and the dividends paid to the stockholders, for the year 1905, which he designated divided profits.    He then capitalized that aggregate at five per cent, a rate he testified to be a conservative rate for the cities of the Eastern Seaboard, and thus found the total value of the company's property to be $18,568,200.    From that he deducted the assessed value of the company's real estate and personal property, exclusive of the mains, services and easement, as also 9.33 per cent of all the mains and services, that being the proportion of mains and services outside of the city limits. He further deducted the former assessment of mains and services, and thus found an increased value of $11,936,971 by reason of said easement.    He then further reduced this amount by an allowance, for the diminution of the value of the total property by reason of the tax upon the assessment, this allowance being an amount equal to the capitalized value of that tax, capitalized at five per cent, the rate of tax for 1905 being 2.235 in the hundred dollars.    This required the reduction of the increased value of the total mains and services and easement to 69.1 per cent of that value, making the true increase.. ....;..... ....................$8,248,446
and adding the former assessed value of mains, and

    services................................ 1,285,035

he concludes the true value of mains and services

    and easements to be......................$9,533,481
Without at all analyzing this method, its result is so strikingly close to that reached in the former case, as respects the total value of the company's property as to be most significant

in itself.   But when analyzed, the substantial identity of the two methods at once becomes apparent.   In the present case the bonds and stock do not appear *eo nomine*, but the interest paid on these same bonds, and the dividends paid on the same stock, do appear.   The rate of dividend for 1905 was four per cent, and the rate of interest paid on the total bonded indebtedness was about 4.95 per cent.   Messrs. Purdy and Bemis assumed that something was laid aside for emergencies before making the four per cent dividend.   Their method of calculation therefore essentially and necessarily involves the value of these bonds.   There is no substantial or actual distinction between these methods as respects the dealing with the bonded indebtedness of the company, whether the amount of the bonded indebtedness is ascertained *directly* from the statement of the company by reference to the *corpus of this* indebtedness as shown in that statement, or whether it is reached *indirectly* by a capitalizing process based upon the interest paid on the same corpus.   In both, the bonded indebtedness of the company is treated as part of its assets, in contravention of the Maryland statutes which require them to be "valued and assessed for State, county and municipal taxation to the owners thereof in the county or city in which such owners may respectively reside."

Argument could not strengthen the conclusion which we think follows from a careful examination of the details of the method in this case.   It may not be amiss to observe that if the capitalized value of the interest paid on this bonded indebtedness be eliminated from the method pursued by Messrs. Purdy and Bemis, the result will be found to be strikingly close to that obtained by Mr. Caughey's method.

If the capitalized value of this bonded indebtedness be thus eliminated, the total value of the company's property would be reduced by . . .   $9,950,000

leaving such value . . . . . . . . . . . . . . . . . . . . . . : . . .   $8,618,200

and if from this the same deductions be made as in their method, viz. . . . . . . .   . . . . . . . . . . . . .   6,631,229

There will remain only. . . . .   . . . . . . . . . . . . . .   $1,986,971

Reducing this to 69.1 % of that

| | |
|---|---|
| amount, to allow the capitalized amt. of the increased tax to be imposed, we should have...... | $1,372,997 |
| To this, add, as they did, the former assessed value of mains and services.................. | 1,285,035 |
| and we have as the true assessed value of mains, services and this easement................... | $2,658,032 |
| Mr. Caughey, in his method, took the assessed value of mains and services for the year 1904..... | $1,131,640 |
| Plus the full fee value of the land occupied by the mains and services as estimated by comparison with the value of adjacent lands | 1,396,921 |
| making a total of............... | $2,528,261 |

and showing a difference between the results of the two methods of only about, in round numbers, $130,000. We do not mean to say however that in assessing the real property of a corporation subject to mortgage, that the corporation is entitled to any credit for the mortgage debt, nor are we to be understood as approving the method of Mr. Caughey, and it will be seen hereafter that we do not regard it as the correct method, but the closeness of the results of the two methods, if the capitalized value of the interest on the bonded indebtedness of the company, be eliminated from the method of Messrs. Purdy and Bemis, is so striking as to be worthy of notice.

The error in their method was in treating the bonded indebtedness of the company as an asset for the purpose of taxation, which we have said they practically did. That error was inseparably connected with their opinions as to the aggregate value of the mains and pipes, in connection with the easement in question, and their valuation, thus reached, was an indivisible quantity, and *therefore* these prayers should have been granted; but we are not to be understood as meaning that their opinions would have been inadmissible, and should

have been disregarded, if the result of their method of valuation had been free from the error indicated.

It will not be necessary to notice in detail all the numerous exceptions to the admission or exclusion of testimony, nor to review in detail all the rejected prayers, but some of these must be considered. It would appear reasonable to hope that no further appeal, to this Court at least, will be required in order to reach a satisfactory assessment of this easement, but as in event of another appeal, some of the questions raised in this case might be raised again, we will consider them now.

And first, as to whether it was competent to inquire *from the members of the Appeal Tax Court themselves* what were their methods and mental processes in reaching the assessment they made for the purpose of showing either that it was illegal or excessive.

The appellees have cited in their brief numerous, respectable and eminent authorities from other jurisdictions to sustain the proposition that the method of assessors in arriving at their conclusions is a matter absolutely committed to their discretion, and that the members of such a tribunal cannot be put upon the stand to testify as to the operation of their minds in doing the work entrusted to them, and many of those authorities are collected in 27 *Amer. & Eng. Ency. of Law*, 2nd ed., page 689.

After careful consideration of these authorities however, and with due respect to the eminent Courts by which they are announced, we do not think the law can be so declared in this State.

No proceeding more closely analogous to the present can be found, than that employed in condemning land under the principle of eminent domain, and in such cases ever since the case of *Tide Water Canal Co.* v. *Archer*, 9 G. & J. 317, the practice in Maryland has allowed the examination of jurors, who signed the inquisition as witnesses, on return of such inquisition for confirmation, "upon all subjects whatever relating to the controversy, as fully as any other persons who might be sworn as witnesses in the cause, that they may be examined

as to the grounds and motives for their finding, in order to ascertain whether in coming to their conclusions they had not mistaken facts as well as the law." That case was heard only in the Circuit Court for Harford County, there being no appeal to this Court from such a proceeding, but the opinion there delivered was deemed worthy of full publication in 9 G. & J. and the case has been at last twice cited in the Md. Reports—in 10 Md. 87 and in 44 Md. 607, and has ever since controlled our practice.

In the opinion referred to the Court considered the question at length (p. 487 to 493), and explained very clearly and satisfactorily the difference which exists between a body of men proceeding under a law of that kind, and a common law jury and the reasons which permit and require the examination as witnesses, of members of a jury making such an inquisition, while it forbids the examination as witnesses of the members of a common law jury; but it is unnecessary to recite those reasons here. It is sufficient to say that they apply in their full force to the case we are now considering. Moreover sec. 170 of the new charter of Baltimore City, which provides for an appeal to the Baltimore City Court from any assessment made by the Appeal Tax Court, gives the city Court full power "to require the Judges of the Appeal Tax Court, their clerks, surveyors or other agents or servants to attend, and may examine them on oath or affirmation," and it is a reasonable presumption that the reasons which induced the enactment of that provision, were substantially those which led to the rule declared in *Tide Water Canal Co.* v. *Archer.* For these reasons we think there was error in the 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th and 13th exceptions which constitute one group raising the question we have just considered. The next question is raised by the 11th, 12th, 14th, 15th, 16th, 17th and 18th exceptions in all of which it was sought to show the assessment was unequal, in that it was made by a higher proportion of valuation than on other real and personal property on the same tax roll by the same officials.

As to these it will be sufficient to say that the inequality must be predicated as of the valuation of property to which a common standard of valuation may be applied and no intelligent or fair comparison can be made between the value of ordinary parcels of land and the improvements thereon, and a mere easement to lay mains and pipes in the bed of a public street for the distribution of gas. The remaining eight exceptions relate to the competency and qualifications of Messrs. Purdy and Bemis as experts in this case, the objections being both general and special.

Mr. Purdy is a lawyer and secretary of the New York Tax Reform Association. He testified that he had been a student of taxation for twenty years; that he had made a comparative study of the tax laws of the various States in this country, and of the principal countries of Europe, and of the application of the principles of these laws to the assessment of real property in all its forms; that he had been called on to value the easements of public service corporations in various cities; that he knew the character and extent of the operations of the Consolidated Gas Company, and the mileage and size of its mains and pipes, and that he had ascertained from the statement of facts filed in this case, and from the report of the Gas Company to the State Tax Commissioner what were its earnings and its divided profits for the years 1904 and 1905.

Mr. Bemis is president of the Water Works of Cleveland, Ohio. He has devoted ten years to questions of assessment and taxation; has been employed for five years by the city of Cleveland in investigating the assessment of public service corporations embracing gas, electric light, and street railway companies, and has been called on to value the easements of gas companies in Ohio and elsewhere; and he states he had substantially the same information possessed by Mr. Purdy of the property, earnings, and divided profits of this gas company for the years 1904 and 1905.

From this statement it cannot be doubted that they are generally qualified as experts upon the subject of inquiry in this case. "An expert is one possessing, in regard to a particular

subject or department of human activity, knowledge not ac-
quired by an ordinary person. This knowledge may be derived
from experience or from study and direct mental application."
12 *Am. & Eng. Ency. of Law*, 425. "It is not ground for
excluding the evidence that the witness bases his statements,
in whole or in part upon his reading." 17 *Cyc.*, 39. "The
general rule seems to be where a witness exhibits such a degree
of knowledge gained from experience, observation, standard
books, or other reliable sources as to make it appear that his
opinion is of some value, that he is entitled to testify, it being
left to the trial Court to say when such knowledge is shown,
and to the jury to say what the opinion is worth." 5 *Enc. of
Evidence*, 533.

This Court has said in *Davis* v. *State*, 38 Md. 37, "In the
trial of cases it often happens that questions arise touching
the matter of inquiry quite out of the observation and experi-
ence of persons in general, but within the observation of others,
who from previous study or pursuits, or experience in life,
have frequently or habitually brought that class of questions
under their observation, and hence it is, that in such cases
persons, who from study or experience, have acquired a pe-
culiar knowledge in regard thereto, are permitted to testify
not only as to facts, but also to give their opinion based upon
facts within their own knowledge, or upon facts proved by
other witnesses." Authorities to the same effect are numer-
ous, but there is no occasion to cite them.

It appeared that neither of these witnesses had ever bought
or sold land in the city of Baltimore, nor had any personal
knowledge of any sales of real estate there, and it was then
specially objected that they were not qualified to value this
easement *as real estate*, but this objection was overruled. The
value of this easement however does not depend upon whether
it is classed as real or personal property. Its actual value
would be the same in either case, and we could not hesitate to
sustain their qualification in this respect, even if the question
was a new one. But it is not a new question. In *Sanitary
District* v. *Railroad Co.*, 216 Ill. 575, there was a proceeding

to condemn land for a freight terminal.    At the trial the petitioner produced witnesses who were experienced dealers in real estate in Chicago, who testified that the land had a market value by the square foot, and gave their opinion as to such value.    The witnesses for the defendant did not know the market value by the square foot, or otherwise, of land in Chicago, and had not dealt in real estate in that way, but they knew the value of the property as a freight terminal and were fully qualified to give their opinions upon that subject.    The Court said, "It is matter of common knowledge that such property as this devoted to such a use, is not bought and sold in the market, or subject to sale in that way; and that such property has no market value in a legal sense.    The property being devoted to a special and particular use, the general market value of other property was not a criterion for ascertaining compensation.    *  *  *    Evidence was admitted of the extent of the business done at the terminal station, and witnesses for defendant based their estimates of the value of the whole property upon the business handled and the profits of such business.    We think there was no error in admitting the evidence."

So in *C. & N. W. R. W.* v. *C. & E. R. R.*, 112 Ill. 590, the Court said, "When the proof tends to show that the property has no market value by reason of the particular use to which it is being applied, it is error to instruct the jury that the compensation should not be less nor more than its fair market value."

Again in *Franklin County* v. *N. C. & St. Louis R. R.*, 12 Lea, 521, JUDGE COOPER said, "The value of the roadway cannot be determined by ascertaining the value of the land included in the roadway assessed at the market value of adjacent lands, and adding the value of crossties, rails and spikes.    *  *  *    The assessable value for taxation of a railroad track can only be determined by looking to the elements on which the financial condition of the company depends; its traffic as evidenced by the rolling stock and gross earnings in connection with its capital stock."

Other cases to the same effect are given in the elaborate brief of the appellees, among which we may especially mention *Oregon* v. *Jackson*, 38 Ore. 306, and *Cochran* v. *Commonwealth*, 175 Mass. 302, in which latter case the Court said, "In such a case, to confine the owner to witnesses who show themselves qualified to testify by their knowledge of sales of similar property, would be to deny the owner the right to prove the true value of his property." These principles indeed are fully recognized by this Court in 101 Md., *supra*, in which it was said to be "a self evident proposition, that the use to which a franchise permits an easement to be put, is an essential element to be considered in placing a valuation on that easement for the purposes of taxation," and that statement is further supported in *Simpson* v. *Hopkins*, 82 Md. 490, where it was said, "The true test of a taxable value is the producing value to the owner," and nothing that was said in 101 Md. in discussing *Simpson* v. *Hopkins*, in any manner impairs or qualifies that declaration.

Without this easement the plant of this company would be comparatively of little value. If destroyed, it could be replaced by new buildings and machinery at cost of construction, and if additional real estate were required for operations upon a larger scale it could be acquired upon the basis of value of adjacent lands. But without the right to lay mains and pipes in the streets, and to flow gas through them for distribution to customers whose houses are all on these streets, and can only be conveniently served through the beds of these streets, the exclusive right to carry on the gas business in Baltimore City would offer far less attraction to manufacturers of gas. The taxable value of this easement fixed by any rational and conservative standard would shrink into insignificance when compared with the cost of laying mains and pipes under the dwellings, business houses and premises of private owners.

In illustration of the peculiar value of this easement to the other property of this Gas Company, we may profitably reproduce a passage from the opinion of the Court in *Manufactur-*

*ing Company* v. *Gifford*, 64 N. H. 349, where the subject under consideration was the value of a parcel of land for a reservoir for water works—"The entire value of a parcel of land may consist in its capacity to render other lands valuable, as if, in a desert, a single acre were found whereon artesian wells could be sunk producing sufficient water to irrigate and make fertile the whole desert. The acre would be of great value, because by means of it, lands otherwise worthless could be made valuable. It could not be justly appraised without considering its effect upon them. * * * In the appraisal of a water power, as of other property, all the facts and circumstances affecting its value are competent evidence. The assessors may consider the magnitude of the power, the uses to which it is or may be applied, and the place where it is, or may be utilized; the income derived from it by way of rents or from its use by the owners, the cost of equal power derived from other sources (that is to say its comparative economy); in short anything which may affect the judgment of a person desiring to purchase, in determining what price he would offer."

See also on the same subject *Flax Water Pond Co.* v. *Lynn*, 147 Mass. 131. It is doubtless true that as a general rule the value of an easement will not exceed the value of the fee, as tested by the value of adjacent lands—because as a general rule the purchaser of the fee could put the property to the same use as if he had bought the easement only. But if the fee in the bed of the streets were sold it would still be subject to the right of user by the public, and the Gas Company could not destroy or interfere with this right of user by laying mains and pipes in the bed of the street. In such a case as in others, the easement may be of greater value than the fee estimated by the market value for ordinary uses, and must be so where the owner of the easement has a franchise to use it for a gainful purpose to which another owner could not put the fee. Any other purchaser of the superficial area occupied by these mains and pipes could not make, sell, or distribute gas in Baltimore City while the monopoly of the Gas Company is

continued to it.    An exception to the ordinary rule in this
respect was recognized in *Baltimore City* v. *Latrobe*, 101 Md.
632, where the Court speaking through JUDGE BOYD, said,
"When a piece of property which is subject to an ordinary
lease for a short term, is taken, it may happen that although
the owner of the fee is allowed *full value* for the property, the
tenant must also be paid a large and substantial amount *in
addition* by reason of the value of his lease."

Since the argument of this case we have been referred by
the counsel of the Gas Company to the case of *Taylor* v.
*Mayor of Baltimore*, 45 Md. 576, as distinctly deciding that in
no event could the estimated value of an easement exceed the
fee simple valuation of the land occupied, but we cannot so
regard that decision. That was a proceeding for the condemna-
tion of the use and occupation of a parcel of land in Baltimore
County for the introduction of water into the city, and the con-
duit for that purpose was to pass through said lands at a dis-
tance below the surface, varying from 80 to 120 feet.    The
inquisition provided that the conduit which was 12 feet in di-
ameter, should be *without any opening to the surface, and with-
out the right to enter upon or disturb the surface except* to clear
away timber on the surface and give an unobstructed view for
engineering purposes during the construction of the conduit.
The land owner asked the Court to rule as a matter of law
that the measure of damages could not be less than the fair
market value of the land estimated according to the surface
value.    This was refused and the ruling was affirmed on ap-
peal.

There is a wide and obvious difference between that case
and the present.    There, after construction of the conduit, the
city had no right to enter upon and disturb the surface.    The
lands were agricultural land, and that use was undisturbed by
the construction and maintenance of the conduit.    The pro-
spective value for building purposes was unaffected by the con-
duit, and under these circumstances it would have been an in-
justice to require the city to pay the market value estimated at
the surface.    Here, however, the Gas Company has the right

to enter upon and open the surface as well for the constantly recurring necessity of repairs, as for the purpose of reconstruction or enlargement of the system, a right of which is of very great value to the Gas Company and which is exercised only at great and constant inconvenience to the city and to the public.    That case cannot be regarded as deciding more than that the value of the easement there in question, might be less than the fee simple value of the land occupied, estimated according to the surface value.    It certainly does not decide that the value of that, or any other easement, cannot be more than the fee value of the land occupied.

Conceding for the purpose of the argument, the appellant's contention that it was within the power of the Court to require the submission of prayers by the City Solicitor, the granting or refusing of the appellant's motion to that effect, was a matter within the discretion of the Court, and therefore beyond our control.    If this had been a trial before a jury the Court could, and doubtless would, if it had deemed it necessary for the guidance of the jury, have given such instructions of its own, as it thought proper.    Tried as it was required to be under sec. 170 of the City Charter without the intervention of a jury, there was no necessity for such instructions, and the appellants will be presumed to have received the same measure of protection from the unexpressed views of the Court as from any rulings upon prayers offered by the City Solicitor, or from any formulation by the Court upon its own motion, of the views it entertained.

What we have said disposes of all the material questions raised by the prayers and we do not think it necessary to notice them further.

We have thus distinctly held that the Appeal Tax Court cannot lawfully assess the easement by estimating by the unit rule or otherwise, the gross value of all the property and assets of every kind of the company, and then eliminating the other classes of property, and treating the residuum as the assessed value of the easement, but this does not determine how the easement should be assessed.

Without attempting to answer that question, which is not distinctly raised in this case, we may properly say that in any determination which may be made by the Appeal Tax Court it will be essential to consider the nature and qualities of the thing to be assessed. This easement is real estate consisting of a right or interest in certain parcels of land the location and dimension of which are not only capable of definite ascertainment but have been so established by the testimony in this case. We have said that because the servient land in the present case consists of beds of streets maintained at public expense, penetrating all portions of the city, and for other reasons, this easement possesses a special character and utility which may well be held to give it a value greater than the land affected by it would have for purposes of ordinary use and occupation. The market value of the servient land as mere vacant property, as determined by the market value of lands adjoining the streets, is not the only, nor in our opinion, the chief element of value to be taken into consideration in assessing this particular easement in the public streets of the city. Its special character and apparent necessity to the successful operation of the appellants plant, makes it difficult to suggest a strictly comparative standard of valuation, and perhaps no such standard may have been established, but some light may be thrown upon the subject by an inquiry into the terms upon which other instrumentalities of a somewhat similar nature are permitted to be located and maintained under the beds of the streets. It is a matter of common knowledge that in the city of Baltimore, as in other municipalities, easements are granted for laying and maintaining under the beds of the public streets, private drains and sewer pipes, and conduits for telephone, telegraph and electric light and power service, and for the distribution of steam and hot and cold air and for other purposes for such easements, charges or rentals are paid to the municipality. The testimeny in the present case of J. W. Freeman, the Deputy City Collector, shows the charge per lineal foot at this time made by the city of Baltimore for the right to construct and maintain private drains and sewers and

vaults under the bed of its streets and alleys. Reference to
the above easements is made by way of illustration only. The
productive value of the use to which those easements are put,
is so different from that to which the easement under consid-
eration is put, as necessarily to suggest the inherent difference
in their valuation for the purposes of taxation. Other con-
siderations pertinent to the nature, qualities and productive
value of this easement will doubtless suggest themselves to
the official appraisers who have given time and thought to the
duties of their occupation, and will aid them in arriving at a
just and fair assessment of it. As was said in *Brooklyn* v.
*New York*, 199 U. S. 51 and 52, "All that can be required
is that the assessing power exercise an honest judgment based
upon the information it possesses or can acquire."

The order sustaining the action of the Appeal Tax Court
will be reversed and the assessment of six millions of·dollars
is hereby vacated.

But inasmuch as we hold said assessment to be merely
irregular, and not wholly void, the cause will be remanded to
the Baltimore City Court for further proceedings in conformity
with the views herein expressed, and with the provisions of
sec. 170 of the Charter of Baltimore City.

*Order reversed with costs above and
below, and cause remanded.*