# THE UNITED RAILWAYS AND ELECTRIC COMPANY *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Taxation of Street Railway Companies in Baltimore City— Gross Receipts Tax a Substitute for Taxation of Easement in Public Streets, but Not on Private Rights of Way—Valuation of Easement.*

The Act of 1882, Ch. 229, imposes upon street railway companies in Baltimore City a tax upon their gross receipts of nine per cent. No other tax upon the easements or franchises of the companies or their right to occupy the streets can be assessed against them without special legislative authority.

But when a street railway company in said city is located in part on turnpike roads and private rights of way, upon the receipts from which such tax is not paid, then the easements therein are liable to taxation.

The method adopted in the present case of ascertaining the value of the easements of a railway company in certain roads, *held,* to be improper.

The method pursued of valuing for taxation the viaducts, bridges and trestles of a street railway company, *held,* to be correct.

*Decided June 29th, 1909.*

Appeal from the Baltimore City Court (NILES, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Bernard Carter* and *Joseph C. France,* for the appellant.

*Edgar Allan Poe,* City Solicitor, and *Sylvan Hayes Lauchheimer,* Deputy City Solicitor, for the appellees.

*B. Howell Griswold, Jr.,* filed a brief for the Md. Trust Co., trustee of the income bondholders of the appellant.

WORTHINGTON, J., delivered the opinion of the Court.

The principal question presented by this appeal is, whether the street easements used and occupied by the appellant in the City of Baltimore are subject to valuation and assessment, by the Appeal Tax Court of that city, for the purposes of taxation, under the existing laws of this State.

A somewhat similar question was before this Court in the case of *Consolidated Gas Company* v. *Baltimore City,* reported in 101 Md. 541, and again on a second appeal in a case between the same parties involving the same question reported in 105 Md. 43. In both these cases this Court held that whilst the easements enjoyed by the Gas Company, in the highways of Baltimore City, were taxable, yet that the

method pursued in valuing them was improper and the assessment therefore invalid.

In the present case the appellant does not dispute the right of the Appeal Tax Court to value and assess the easements enjoyed by public service corporations generally, in the streets of Baltimore City, but contends that the tax of nine per cent. on its gross receipts imposed by the Act of 1882, Chapter 279, is in lieu of and in substitution for any other tax on its intangible property, whether it be termed franchise or easement.

There was much discussion at bar, as there is also in the briefs of counsel, as to the exact signification of the words "franchise," and "easement;" and there is no doubt some confusion of thought, in regard thereto, arising from the occasional want of precision in the use of these terms, by persons dealing with the subject. But we think that in this State, the confusion no longer exists, the two words having been clearly distinguished by the opinion of this Court in the *Gas Co.'s Case,* 101 Md., *supra.,* where McSHERRY, C. J., said: "The *right* to occupy the streets with gas mains is a franchise, the actual occupation of them in that way pursuant to the franchise, is the acquisition of an easement." In other words, as defined by this Court, the *right* to use the streets for some special purpose, is a franchise, and the *actual user* of them for that purpose is an easement.

If the appellant obtain from the City of Baltimore the privilege, or right of putting down its tracks, and running its cars over and upon a certain street in that city, but does not for a while exercise such privilege, or right, by laying its tracks and running its cars thereon, it would possess "the naked, slumbering unused franchise," merely, which separately considered, is not property in the sense that it is of substantial value for the purposes of direct taxation. Whenever the appellant should exercise that right or privilege, however, by laying its tracks and operating its cars thereon, then there would spring into existence the easement, which is now generally recognized as property. A new kind of

property, it is true, invisible, intangible and elusive, yet of substantial value and amenable to taxation.

On June 20, 1908, this intangible property of the appellant was assessed by Appeal Tax Court for the purposes of taxation at $11,214,460. Upon appeal to the Baltimore City Court under section 170 of the Baltimore City Charter, the amount of the assessment was reduced to $2,611,925.81.

The Railway Company has brought this appeal, conceding, as we have said, that under the decisions of this Court, such property is subject to taxation, but claiming that in this case the tax on gross receipts, above mentioned, known as the Park Tax (because the proceeds are required to be applied to the maintenance of the public parks of the City), is itself a complete and adequate tax on the easements enjoyed by the Railway Company in the highways of Baltimore, and that these easements are thereby exonerated from any further taxation under the existing laws of the State.

The answer of the City to this connection may be divided into three principal heads:

First, they cite the language of this Court in *Sindall's Case,* 93 Md. 536, where it was said: "The taxing power is never to be presumed to be surrendered, and therefore every assertion that it has been relinquished must, to be efficacious, be distinctly supported by clear and unambiguous legislative enactment. To doubt is to deny exemption."

We do not think, however, that this is a satisfactory answer to the appellant's contention. What appellant claims is not exemption, but exoneration. It does not contend that the State has surrended its right to further tax the easements in question, but that having taxed them in the manner prescribed by Act of 1882, Chapter 279, further legislative action is necessary before an additional burden of taxation can be lawfully imposed upon them.

Second, on the part of the City it is further said that the Park Tax is a tax upon the special franchise to use the streets merely, and is not a tax upon the actual user of them. In other words, that the Park Tax is in fact only an annual

rental paid for the exercise of the franchise, and not a property tax at all. The three *Park Tax Cases* reported in 71 Md. 405; 84 Md. 16, and 107 Md. 250, are cited in support of this proposition.

We, of course, affirm what was said in those cases, to the effect that the Park Tax was a franchise tax exacted in exchange for the privilege accorded the street railway companies to lay their rails and run their cars upon city streets. But the language of these cases must be considered with reference to the questions then before the Court. In none of them was any question concerning the separate taxation of easements as distinguished from franchises presented.

In fact, so closely related are special franchises and easements, the one to the other, that until easements came recently, within a few years past, to be recognized as a distinct species of property subject to taxation, these terms were frequently used as synonymous. Indeed, in the New York statute which was passed in 1899, expressly authorizing the taxation of this new kind of property, by amending its tax laws, what this Court has defined to be an "easement" is termed (in the statute) a "special franchise." In construing that statute the Court of Appeals of New York, in an opinion by MR. JUSTICE VANN, speaks of this property as newly discovered property, consisting of "special franchises" or privileges, unseen, without form or substance, and for that reason never before brought under the taxing power. *People* v. *Tax Commissioners,* 174 N. Y. 441.

Besides this, JUDGE BOYD, in 107 Md., *supra,* speaking for this Court, says: "The real consideration for the (park) tax is the use of the streets, and not merely the right to use them, which may never be exercised."

We do not think therefore that the three *Park Tax Cases* can fairly be said to deny the contention that the nine per cent. tax on gross receipts did include as an element thereof a tax upon the easements enjoyed by the appellant in the highways of Baltimore City.

If we consider the amount paid to the City by virtue of such tax, the contention of the appellant appears still more reasonable. It appears from the record that in 1907 the tax upon gross receipts amounted to the sum of $435,065.84, which at a tax rate of two per cent., the approximate rate prevailing in the City of Baltimore, is equivalent to a direct tax upon an assessment of $21,753,292.

Besides the above tax on gross receipts, the appellant also paid for 1907 city taxes on its tangible real and personal property the sum of $91,995.15, also a license tax on its cars of $4,289, and for paving between its tracks and two feet on each side thereof the sum of $71,334.06, making a total of over $600,000 paid by the appellant in taxes and charges of different kinds to the City of Baltimore, or for its benefit, for one year.

But leaving out of consideration the additional burdens and charges above mentioned, and having regard to the tax on the gross receipts imposed by the Act of 1882, Chapter 279, alone, when we reflect that such tax reaches every nook and corner of value in the easements, as well as in the franchises of the corporation; that the amount of the tax is equivalent to a direct property tax on an assessment of over $20,-000,000; that there could scarcely have been a thought in the legislative mind at that time (1882) of taxing the easement separately as property distinguished from the franchise, and that in fact no effort was made to tax easements for a period of twenty-five years thereafter, we think the inference is irresistible that the Legislature did not then contemplate a tax on the easements enjoyed by the street car companies now composing the appellant, in addition to the gross receipts tax which by that Act it imposed upon them. A tax on gross receipts necessarily involves the idea of the user of the franchise, for without such user no receipts would be earned.

The third principal objection urged by the City against the contention of the appellant is that a substitute tax is a commutation tax which involves the idea of an *ad valorem*

assessment by the Legislature in the first instance of the ease-
ments, and such an assessment, it is claimed, the Legislature
cannot lawfully make; citing *State* v. *Cumberland,* 40 Md.
22-53; 27 *A. and E. E. L.,* pp. 660-661. In opposition to
this objection the cases of *Faust* v. *Bld. Assn.,* 84 Md. 186;
*Baltimore* v. *State,* 105 Md. 1, and others, are cited by the
appellant. But we do not deem it necessary to decide this
question, because we think the gross receipts tax was never
intended as a commutation tax in the sense that term is em-
ployed by the solicitors for the City, but as a tax upon the
corporation itself, measured by the amount of business which
it does from year to year, and intended as a substitute for a
direct tax upon all of appellant's intangible property. In
*Philadelphia and Reading R. R.* v. *Pennsylvania,* 15 Wall.
284, the Supreme Court says: "It is not to be questioned
that the States may tax franchises of companies created by
them, and that the tax may be proportioned either to the
value of the franchise granted, or to the extent of its exer-
cise; nor is it deniable that gross receipts may be a measure
of approximate value, or, if not, at least of the extent of
enjoyment."

The extent of the enjoyment of the franchise furnishes a
satisfactory basis for ascertaining the amount of the tax
to be paid for the easement, as well as for the franchise, and
we are unable to say that in passing the Act of 1882, Chap-
ter 279, the Legislature intended to distinguish between these
two so closely connected kinds of intangible property.

In the *Gas Company's Cases,* 101 Md. 547, 105 Md. 43,
this Court decided that the usable value of the easement is
its real value; and no better method of ascertaining the usa-
ble value of an easement seems yet to have been devised than
that of taxing the gross receipts of the company enjoying the
easement. In their brief, counsel for the appellant say: "We
concede that the Legislature, under its reserved power, can
change the existing method whereby the appellant's street
easements or franchises contribute their share to the public ·

burden. But this reserve power has not been delegated to the Appeal Tax Court." And to this proposition we assent.

We hold, therefore, that as to the easements enjoyed by the appellant in the streets of Baltimore City upon which the Park Tax is earned and paid, no further assessment thereon for the purposes of taxation. can be lawfully made without express legislative authority, and that consequently the assessment of them by the Appeal Tax Court and by the Baltimore City Court on appeal is illegal and void.

We find nothing in the case of *New York* v. *Tax Commissioners,* 199 U. S. 1 (50 L. Ed. 65), cited by appellee, at war with the views herein expressed. That case is the same above referred to as having been decided by the Court of Appeals of New Yrok, and reported in 174 N. Y. 441 (*supra*). The case was carried to the Supreme Court of the United States upon a writ of error, where the decision of the New York Court was affirmed. MR. JUSTICE BREWER, speaking for the Supreme Court in that case, said: "The rule of strict construction applies to State grants, and unless there is an express stipulation not to tax, the right is reserved as an attribute of sovereignty."

In that case, as we have seen, the Legislature in the exercise of its attribute of sovereignty, amended the tax laws, and in express terms added "special franchise" to the other taxable property of the State. In that case, as in this, the Legislature had previously imposed a tax upon the gross receipts of the complaining companies, but in that case there was further action by the Legislature authorizing the assessment, while here there is none.

. The clear distinction between the *Gas Company's Cases,* *supra,* and the case at bar, is that in the former the Legislature provided for no tax upon the corporation that could be regarded as a substitute for a direct tax upon its intangible property, while in the present case it did so provide.

As to the fourteen miles of easements of appellant in the City of Baltimore located on turnpikes and private ways, and upon which no gross receipts tax is paid, we think these are

subject to taxation by the Appeal Tax Court, but we must again declare the method pursued in making the assessment not the proper one to ascertain the taxable value of such easements.

The difficulty of the subject is appreciated, but certainly in valuing easements in the Annex, the cost of the German street franchise of $6.67 per running foot, should not be averaged with the Garrison avenue franchise, which cost less than five cents per running foot.

Indeed, it is not entirely clear just what relation the cost of the franchise bears to the value of the easements. It may very well be considered as an element in ascertaining such value in the first instance, but as was said in 101 Md., *supra:* "The use to which a franchise permits an easement to be put is an essential element to be considered in placing a valuation on that easement for the purpose of taxation." In other words, the true test of the taxable value of an easement is its producing value to the owners. *Simpson* v. *Hopkins,* 82 Md. 460; *Gas Co.'s Case,* 105 Md. 57.

This Court does not feel called upon to devise a scheme for the taxation of easements, but we think the assessable value of a railroad easement for the purpose of taxation can only be determined by looking to all the elements that in any way reflect the worth or utility of the easement; the original cost of the franchise, if any, the cost of operating the road, the gross earnings, the amount of car service required, as well as the amount of capital stock invested, and the amount of taxes already paid upon its tangible property.

We concur in the views of the Court below in regard to the assessment on viaducts, bridges and trestles and the valuation of these structures at $164,500 will not be disturbed.

The parties having agreed to an assessment on tracks and appurtenances of $12,000 per mile per single track, aggregating $2,800,092 no question in regard thereto is before us for review.

But as we think the Appeal Tax Court has no power under existing laws to further tax the easements of the appellant

upon which the 9 per cent. gross receipts tax is paid and that the assessment of the fourteen miles of easements of turnpikes and private ways was invalid the assessment thereon of $11,214,460, by the Appeal Tax Court, and of $2,611,928.81 by the Baltimore City Court will be, and such assessments are hereby severally vacated and annulled.

The question presented by this appeal, we are aware, is an important one to the taxpayers of Baltimore City, as well as to the stockholders and income bondholders of the corporation, and we have reached our conclusion after the most careful consideration of the whole subject that our time would permit; our labor being lightened by the able and illuminating briefs of counsel, as well as by their oral argument at bar, and also by the very admirable brief submitted by Mr. B. Howell Griswold, Jr., on behalf of the Maryland Trust Company, trustee of the income bondholders.

For the reasons assigned, the order of the lower Court must be reversed and the amount of the assessment upon the property embraced within this appeal, exclusive of the fourteen miles of easements in the Annex, is hereby fixed, for the year 1908, at the sum of $2,964,592, that being the sum of the two items of track assessed by the lower Court at $2,800,092, and of viaducts, bridges and trestles, assessed by the lower Court at $164,500. As to the fourteen miles of easements on private ways and turnpikes in the Annex, the cause will be remanded to the Baltimore City Court for further proceedings in conformity with the views herein expressed.

*Order reversed and cause remanded.*