## CIRCUIT COURT OF BALTIMORE CITY.

Filed May 17, 1926.

CLARENCE W. MILES
VS.
HAROLD E. WEST, ET AL.

---

WILLIAM S. NORRIS
VS.
HAROLD E. WEST, ET AL.

---

*Thomas J. Tingley,* People's Counsel, *Clarence W. Miles* and *Linwood L. Clark* for complainants.

*Joseph C. France, Edwin G. Baetjer, Attorney-General Thomas H. Robinson* and · *Assistant Attorney-General John Hubner Rice* for defendants.

FRANK, J.—

As briefly as possible I shall state my conclusions upon the two questions presented for determination. Extended consideration is impossible in view of the desire of all parties to have this case presented to the Court of Appeals during its present term, for which purpose arrangements have already been concluded.

I.

The bill of complaint herein attacks the order of a majority of the Public Service Commission (Harper, Commissioner, dissenting), holding the easements owned by the United Railways and Electric Company of Baltimore in the public streets of Baltimore City to be "property" of that corporation within the meaning of Section 30, of the Public Service Commission Law of Maryland (Bagby's Code, Art. 23, Sec. 385) and fixing the fair value of said property at $7,000,000.

In a proceeding such as this, the rule is clear that "the Commission's order shall not be disturbed except upon clear and satisfactory evidence that it is unreasonable and unlawful. Where the evidence produced by the party alleging the unreasonableness of the order is not of such a character, the Court is without power to enjoin its execution."

Public S. Com. vs. N. C. Rwy. Co., 122 Md. 355, 392.

(a) In Maryland, in the Easement Tax Cases, the Court of Appeals has emphasized the distinction between "the *right* to do a particular thing—which is a franchise" and "the *results* achieved in the exercise of the right." "The *right* to occupy the streets * * * is a *franchise*—the actual *occupation* of them in that way pursuant to the franchise is the acquisition of an *easement*" (Italics are in Court's opinion).

Consol. Gas Co. vs. Baltimore City, 101 Md. 541, 546.

The easement is property subject to assessment for tax purposes and taxable as real estate.

See also Consol. Gas Co. vs. Baltimore City, 105 Md. 43.

In the case of the Railways Company, the park tax of 9 per cent. of gross receipts is prescribed in lieu of the real estate property tax which is payable by the other corporations owning such easements.

United Railways & Elec. Co. vs. Baltimore City, 111 Md. 264.

The fact that the easement was acquired without compensation cannot change the nature of the estate held by the company.

Consol. Gas Co. vs. Baltimore City, 101 Md. at p. 550.

In construing the very section of the Public Service Law herein involved, the Court of Appeals criticised as "calculated to mislead" the expression "value of the property * * * *for rate making purposes."* The Commission is empowered to "ascertain the fair value of the property of the corporation." "That, and that only, is the valuation which the Public Service Commission is authorized to ascertain and it would tend not only to work an injustice, but to render absurd a proposition that the property of a public service corporation might have one value in fact, another for purposes of rate making, and a third for purposes of taxation * * *."

Havre de Grace Bridge Co. vs. Pub. Ser. Com., 132 Md. 16, 2d

The Commission is forbidden by Sec. 27 of the Public Service Law (Art. 23, Sec. 381), to authorize the capitalization of (1) any franchise to be a corporation or (2) of any franchise or right to own, operate or enjoy any franchise whatsoever in excess of the amount actually paid to the State or to a political subdivision thereof as a consideration for the grant of such franchise or right. The bonus tax is the charge exacted by the State for the franchise to be a corporation. The charge imposed by Baltimore City is a charge for the franchise (Balto. City Code, Sec. 8, etc.). The Public Service Law was passed subsequent to the decisions in the Easement Tax Cases and may be fairly presumed to have been enacted in view of the distinction so clearly drawn between franchises and easements. The conclusion is a reasonable one that the capitalization of easement was not intended to be prohibited, but on the contrary that easements not coming within the inhibition of the law, might fairly be made the subject of capitalization. See also Sec. 52A of the Law (Art. 23, Sec. 415).

The complainant contends that "any franchise or right to own, operate or enjoy any franchise whatever" in Sec-

tion 27, is the equivalent of "easement" as used in the Easement Tax Cases. But Chief Judge McSherry says, "you must distinguish between the *right* to do the thing, and the *interest* acquired in the soil by the exercise of that right." (Italics his.) 101 Md. at p. 546. The Court quotes with approval from a Virginia case, "But the *franchise* consists in the incorporeal right: the property acquired is not the franchise. A bank has a right to purchase a banking house; when purchased is the house a franchise? Surely not, for it is corporeal, whereas a franchise is incorporeal." "In Bridgeport vs. N. Y., etc., R. Co., 36 Conn. 266, it was held that a franchise does not include property gained by the exercise thereof." In view of this language, it seems clear that the easement is not the equivalent of a "franchise or right to own, operate or enjoy any franchise whatever." This can only mean in the light of the Maryland decisions "the right to do a particular thing—which *is* the franchise" and "not the results achieved in the exercise of the right," which constitute the easement.

(b) Moreover, the easements of the Railways Company are property in the sense that they cannot be taken even for public use without full compensation being paid for them.

Baltimore City vs. United Rwys. & Elec. Co., 126 Md. 39, 53.

(c) The contention made by the plaintiff is that, although these easements are thus property for tax purposes, and are properly within the constitutional requirements that they cannot be taken unless duly compensated for, they are not property in the sense that the company is entitled to earn a fair return thereon.

"The just compensation safeguarded to the utility by the 14th Amendment is a reasonable return on the value of the property used at the time that it is being used for the public service. And rates not sufficient to yield that return are confiscatory."

Board of Public Utility Coms. vs. New York Teleph. Co. (Sup. Ct. U. S. Dec. Apr. 12, 1926) Adv. Ops., 1925-1926 at p. 439.

I have been referred to, and have found, no case in which the allowance

of a value to easements by the State authorities has been declared improper by the Federal Courts. It is only where such allowance has been refused and such refusal has been claimed to be confiscatory that its propriety has been passed upon. In Willcox vs. Consol. Gas Co., 212 U. S. 19, 53 L. Ed. 382, a number of gas corporations had consolidated under the provisions of the general law of 1884, had fixed the value of their franchises at $7,781,000 and had issued securities based on the value of all of their "property, franchises and rights." A committee of the State Senate subsequently investigated the consolidation and reported that in its opinion the above valuation was not too high. "We think," said the Court, "that, under the above facts, the courts ought to accept the *valuation* of the franchises fixed and agreed upon under the act of 1884 as conclusive at that time. The *valuation* was provided for in the act, which was followed by the companies, and the agreement regarding it has always been recognized as valid, and the stock has largely been dealt in for more than twenty years past on the basis of the valuation and of the stock issued by the Company." (Italics supplied.) The right to include the franchise for valuation purposes was assumed, the only question involved was the amount of value and that was held to be fixed by that stated in the consolidation agreement. No public authority had ever fixed this value at a higher figure and the larger amount claimed by the company was rejected by the Court.

An analogous argument might be made in the case of the United Railways and Electric Company. It was the result in 1899 of the consolidation of several corporations, under the provisions of the general corporation law of this State. The easements of its constituent companies became vested in it. It issued many million dollars of securities, bonds and stocks, upon the faith of its ownership of its tangible property, franchises and easements. These securities have been largely dealt in for more than twenty-six years on the basis of such ownership. The easements were not separately valued as was done in the Willcox case and, therefore, no specific valuation is involved, but on principle how does the instant case differ from the Willcox case upon the fact of the inclusion of

such easements in the aggregate of the company's property?

I cannot reach the conclusion that easements which are real property subject to taxation, of which the owner cannot be deprived without just compensation, which became subject to the liens of its mortgages prior to the enactment of the Public Service Law, upon the ownership of which it has obtained credit and upon the faith of which it sold its securities to the public, is not to be regarded as property upon which it is entitled to earn a fair return. As the valuation made by the Commission is *prima facie* evidence of the value of said property in all proceedings before the Commission (Sec. 30 of the Act), the importance of the valuation herein involved is apparent.

The valuation of $7,000,000 made by the Commission which is now the subject of attack was reached without reference to the earning capacity of the easements so valued. The objection to valuing an easement in a rate base in terms of earnings is self-evident. The greater the earnings, the larger the value of the easement. The greater the value of the easement, the larger the fair return that must be allowed upon such value. While certain authorities regard this situation as conclusive against the inclusion of easements for rate valuation purposes, that result should be reached only where the value of the easement can be determined solely from the earnings of its owner. In Consol. Gas Co. vs. Balto. City, 105 Md. 43, at p. 61, the Court pointed out several other methods of fixing the value of easements for tax purposes. "This easement is real estate consisting of a right or interest in certain parcels of land the location and dimensions of which" are definitely ascertainable. The market value of the servient land, as determined by the market value of lands adjoining the streets, is one, though not the chief, element of value to be taken into account. Easement charges for other purposes made by the municipality furnish a proper basis for comparison. The special recognition of the easement as taxable property in Maryland, coupled with its assessability without reference to earning capacity, seem to me to justify its treatment by the Commission as property for rate-making purposes. I, therefore, approve the order of the Commission on this point.

## II.

The intervening petition, filed by William S. Norris, attacks the allowance of $8,560,210 as "going value" of the Railways Company's property. It claims as matter of law that no award for going value can be made, that this element of value is already taken care of in the valuation of the tangible property of the company. On the other hand, the Railways Company insists that the allowance made is, as a matter of fact, inadequate. Both of these contentions involve matters of fact. If in fact allowance for going value has been included in the valuation of tangible property, then obviously to value it separately would be a mere duplication which is not permissible. I do not find such to be the fact. Both this contention on the facts and that of the Railways Company are concluded by the effect to be given to the findings of the Commission as set forth in Pub. S. Com. vs. N. C. Rwy. Co., 122 Md. 355, 392.

That going value is allowable as a part of the rate basis is determined by ample authority.

Des Moines Gas Co. vs. Des Moines, 238 U. S. 153, 171, 59 L. Ed. 1244, 1253; Denver vs. Denver Union Water Co., 246 U. S. 178, 184, 191-2, 62 L. Ed. 649, 658, 661; Galveston Electric Co. vs. Galveston, 258 U. S. 388, 394, 66 L. Ed. 678, 682; City of Fort Smith vs. S. W. Bell Tel. Co., Adv. Ops. 1925-1926, p. 236 aff.; Fort Smith Co. vs. Fort Smith, 294 Fed. 102.

Mr. Justice Brandeis concedes the propriety of including "as part of the investment such amount, if any, as was necessarily expended at the start in overcoming initial difficulties incident to operation and in securing patronage."

Galveston. Elec. Co. vs. Galveston, supra, at p. 394, L. Ed. p. 682.

Constitutional protection against confiscation does not depend on the source of the money used to purchase the property. That it has been paid for out of past earnings is no ground for refusing a fair return on it.

Board of Public Utility Comrs. vs. N. Y. Tel. Co., U. S. Adv. Ops. 1925-26, p. 439.

The fact, therefore, that going value was built up by the expenditure of past earnings furnishes no reason for denying it its reasonable value. In this regard also, I approve the unanimous conclusion of the Commission.

I shall sign a decree in accordance with these views.

I regret that shortness of time prevents me from reviewing more fully the contentions of all parties, particularly as the case was presented with marked ability by all the counsel engaged.